**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pauline Clark WHITE, a/k/a Pauline Littlejohn, Defendant-Appellant.**

**No. 30822.**

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1971.

Rehearing Denied Dec. 27, 1971.

Reuben A. Garland, Edward T. M. Garland, Atlanta, Ga., for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., Robert L. Smith, E. Ray Taylor, Jr., Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before RIVES, AINSWORTH and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

Pauline White, a/k/a Pauline Littlejohn (defendant-appellant) and Ossie Ligon were arrested and charged with illegal importation of marijuana in violation of 21 U.S.C. § 176a. At a joint trial in the United States District Court for the Northern District of Georgia, both were convicted wholly on circumstantial evidence. From that conviction, Mrs. Littlejohn has filed this appeal.

In July of 1969, United States customs officials in San Francisco, California, intercepted a package with a return address reading, "Sgt. First Class Henry Irby, APO San Francisco, California

96257." The package was addressed to Mrs. Pauline Littlejohn, c/o a Mrs. Russell at Mrs. Russell's home in Atlanta, Georgia.[1] Inspection of the package in San Francisco revealed five plastic bags of a substance which appeared to be marihuana in a box wrapped in brown paper and taped with green tape. It was then forwarded to Atlanta customs officials. There Special Customs Agent Buselmeier extracted two samples and forwarded them to the U.S. Customs Chemist's office in Savannah for analysis.

A laboratory test was conducted showing the samples to be marihuana. The bags were dusted with a fluorescent powder and resealed in the original package. That package was then delivered by a postal employee to Mrs. Russell's home at approximately 3:30 P.M. on August 5, 1969. Simultaneously, Mrs. Russell's abode was placed under surveillance. At about 4:00 P.M. that same day, four customs agents entered the Russell residence under authority of a valid search warrant.

Mrs. Russell denied the package was hers, but rather indicated it was for Mrs. Littlejohn. It had not been opened. Mrs. Russell cooperated with the officials by telephoning Mrs. Littlejohn and informing her of the package's arrival.

Mrs. Littlejohn arrived shortly thereafter in a car driven by Ossie Ligon and containing her three children. Mrs. Littlejohn entered the house and, approximately fifteen minutes thereafter, left carrying the package[2] to her car. The car drove off, and customs agents proceeded to follow. Mrs. Littlejohn's car was lost from sight for a short time but was relocated, stopped, and searched some ten minutes after her initial departure.

No package was found in the car; nor was any marihuana discovered. The hands of both Mrs. Littlejohn and Ligon were tested for traces of the fluorescent powder with which the bags had been dusted. Both showed traces of the powder on their hands; traces were found under the dashboard; and a small piece of paper and a strip of green tape similar to that with which the package had been wrapped and secured were located in the car.

Mrs. Littlejohn and Ligon were arrested and charged with illegally importing marihuana into the United States. Prior to trial the district judge denied several portions of a motion for discovery, 50 F.R.D. 70. The denied requests sought:

(Nos. 5 and 6) "Any and all books, boxes, pictures of boxes, documents or tangible objects obtained or belonging to the defendant, co-defendant, and/or co-conspirator. Any and all books, papers, documents or tangible objects obtained from any other person or persons by seizure or process and relating to the charges contained in the indictment against the defendant."

(No. 7) "Any and all reports obtained by the Federal Bureau of Investigation, Treasury Customs Agents and United States Postal Inspectors."

(No. 9) Any exculpatory material. [Paraphrased and greatly shortened.]

(No. 10) "The names, addresses and telephone numbers of any persons the government knows to possess relevant information to the charges in the indictment, including but not limited to any informants or confidential sources."

(No. 11) "The minutes of the Grand Jury testimony of any and all witness-

---

1. From the record it is not clear whether the package was addressed to Pauline Littlejohn, % Mrs. Russell, or to Mrs. Russell, % Pauline Littlejohn. It is certain that the address on the package was that of Mrs. Russell, and in either case the distinction becomes irrelevant owing to other circumstances.

2. One issue in this appeal is whether the Government adequately proved Mrs. Littlejohn left with the same package which was the subject of the customs investigation. That issue will be considered *infra*.

'es received in connection with the above-captioned case."

At trial in district court, Mrs. Littlejohn maintained that the package she took from Mrs. Russell's house contained no marihuana, but that it contained a diamond engagement ring and a picture book. A ring and book fitting those descriptions were entered into evidence by Mrs. Littlejohn. Nonetheless the jury convicted both defendants.

On appeal Mrs. Littlejohn urges reversible error in two instances:

 I. That the jury was without sufficient evidence to warrant finding her guilty.

 II. That the denial of the enumerated portions of a discovery motion constituted a violation of due process and of Rule 16(a) and (b), F.R.Cr.P.

We find both contentions to be without merit and accordingly affirm the judgment below.

## I. Sufficiency of the Evidence

█ It is not the function of this Court to conduct a trial *de novo*. Rather, the verdict of the jury below must be sustained if, considered in the light most favorable to the Government, the evidence could warrant a guilty verdict.

The basic elements in proof of the offense with which Mrs. Littlejohn was charged are (1) that she had possession of what she knew to be marihuana, and (2) that she knew the marihuana to have been imported.

The facts show that the Government conducted laboratory tests, the results of which were introduced into evidence, which confirmed that the contents of the package was marihuana. The defense proffered no contradictory evidence. Thus, the jury could properly find that the package did contain marihuana. Similarly, there is enough evidence to prove that the package containing the marihuana was delivered to Mrs. Russell's house. When agents entered her home the package was found intact. It was kept in sight until Mrs. Littlejohn arrived. Mrs. Littlejohn admits that when she left she was carrying with her a package. (Appellant's Brief at vii). The question then becomes whether there was substantial evidence that the package with which Mrs. Littlejohn departed was the same package which the customs agents had caused to be delivered to the Russell residence. The answer is that there was such evidence. At trial in district court, Mrs. Russell so testified.[3] It was within the province of the jury to believe Mrs. Russell.

Thus the jury could rightfully conclude that Mrs. Littlejohn took the package containing the marihuana. It must next be determined whether there was substantial evidence both that she knew the contents to be marihuana and that she knew the marihuana to be imported.

The jury was presented with two sets of facts to explain the occurrences in question—one from the Government, one from Mrs. Littlejohn. The Government alleged that the package in question contained marihuana. The jury accepted that version rather than Mrs. Littlejohn's contention that the box contained a ring and a picture book. Having adopted the Government's view, the jury could conclude that Mrs. Littlejohn's story was a fabrication designed to obfuscate the truth and that she knew the

---

3. Direct examination of Mrs. Russell:

 "MR. SMITH [for the Government]: Mrs. Russell, you say—could you tell us whether or not you saw Mrs. [Littlejohn] leave your house?

 MRS. RUSSELL: She left my house.

 MR. SMITH: What did she leave there with?

 MRS. RUSSELL: She had a packet in her hand.

 MR. SMITH: How many packages?

 MRS. RUSSELL: I am not sure how many packages she had in her hand. *She had the box.* I don't know what else.

 MR. SMITH: *The box that was mailed to you?*

 MRS. RUSSELL: *That's right."*

 (R. at 103) (emphasis supplied).

package contained marihuana. Mrs. Littlejohn even admits that there was some "evidence relat[ing] to the fact that she may have received or concealed marihuana after it had been imported \* \* \*." (Appellant's Brief at 3). Had she argued that upon discovery of the contents of the package she had immediately discarded the illegal drug wishing to have no part in an unlawful scheme, the case might be different. Yet she chose not even to admit the existence of the marihuana. Put shortly, the jury could properly conclude that Mrs. Littlejohn took possession of the package in question knowing either at that time or shortly thereafter that it contained marihuana.

The sole remaining question, then, is whether she knew that the marihuana was imported. Mrs. Littlejohn dwells hard on this question. Her argument is strained. As noted above, the return address read: "Sgt. First Class Henry Irby, APO San Francisco, California 96257." Mrs. Littlejohn argues that such a legend is not evidence substantial enough to prove her knowledge of importation. She says that to so prove:

"It is imperative for Mrs. Littlejohn to have known one of several things: (1) A man named Irby, and that such a man was stationed in Vietnam, or (2) she needs to have known the practice of the United States Post Office in that only letters or packages coming from outside of the continental United States or Hawaii and Alaska are marked with APO numbers, and knowing this fact, that she in actuality saw the return address along with its APO number."

(Appellant's Brief at 5–6). She may or may not have known a man named Irby,[4] but there was ample evidence from which the jury could find that she knew the package in question came from Vietnam. Mrs. Littlejohn denied that the package contained marihuana, but she admitted it came from overseas. (See e. g., R. at 336). Furthermore, having corresponded with her fiance who was then in Vietnam, she was obviously aware of post office practices concerning the legend "APO San Francisco." On the facts presented, the jury had an ample basis from which to conclude that Mrs. Littlejohn had knowledge of importation.

## II. The Motion for Discovery

Mrs. Littlejohn alleges that the district court committed reversible error in refusing to grant requests numbers 5, 6, 7, 9, 10 and 11 of her motion for discovery. The district court based its refusal to allow discovery as to the questioned matters on the ground that Mrs. Littlejohn had failed in her burden to show the materiality and reasonableness of her requests. (R. at 521). Furthermore, the trial judge found requests 7, 9, 10 and 11 to be precluded by Rule 16(b)'s exclusion of the work product of the Government and of statements made by Government witnesses. (R. at 521–22).

Rule 16(b) provides, *inter alia*, that discovery if otherwise appropriate may be ordered "upon a showing of materiality to the preparation of [the] defense and that the request is reasonable." The record discloses no such showing by or on behalf of Mrs. Littlejohn. However, there is authority for the proposition that no proof of reasonableness or materiality is required with respect to matters enumerated in Rule 16(a), but rather that discovery of those items is an "almost automatic right." Rezneck,

---

4. Direct examination of Mrs. Littlejohn:
 MR. GARLAND [Attorney for Mrs. Littlejohn]: Do you know a man named Irby?
 MRS. [Littlejohn]. I never heard of him until the officers were asking me about Irby, but I don't know anybody by the name of Irby. (R. at 324).

However, Mrs. Russell testified that Mrs. Littlejohn was expecting a package from her fiance in South Vietnam, who was named Littlejohn, which might bear a different name as returnee so as to avoid some sort of regulation limiting the number of parcels a soldier can send home. (R. at 93).

The New Federal Rules of Criminal Procedure, 54 Geo.L.J. 1277 (1966). And subsection (a)(2) of Rule 16 specifically alludes to "results or reports of * * * scientific tests or experiments made in connection with the particular case * * *."

■■ On appeal, Mrs. Littlejohn alleges that in request number 7—demanding disclosure of any and all Government reports—she was seeking discovery of the Government's laboratory tests as to the identity of the contents of the package in issue. Although "[t]here is no requirement in Rule 16(a) that defendant designate those materials he seeks, since frequently he will be unaware of their existence," it would seem that the defendant should not be allowed to conduct a fishing expedition. 4 Barron & Holtzoff, Federal Practice and Procedure 63 (Wright ed. Supp. 1967). Furthermore, Rule 16(b) excludes all reports other than those enumerated in Rule 16(a)(2) from the discovery process. Mrs. Littlejohn's request number 7 was not worded in terms of "all scientific reports" but rather in terms of "any and all reports." Although her right to discover the laboratory reports might be almost automatic, it could be said that she had some minimum burden of showing that she was seeking disclosure of items permitted in subsection (a)(2) of Rule 16.[5]

She never apprised the district court of a desire to see scientific reports; she asked for any and all reports. It would seem wrong to hold the district court in error for refusing such a broad request. Mrs. Littlejohn should have phrased her motion more narrowly. Finally, it should be noted that the strategy of Mrs. Littlejohn's defense did not involve an attack upon the veracity of the laboratory reports. Rather, it was her contention that she received no box containing anything remotely resembling marijuana, but that the box contained a ring and a picture book. If that were true, the results of the laboratory reports were immaterial, and at most the district judge's refusal to permit discovery constitutes harmless error.

None of Mrs. Littlejohn's other requests for discovery fall within Rule 16(a). Therefore the district court's finding seems sustainable that she failed to make the requisite showing of materiality and reasonableness.[6]

However, the impact of Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, on Mrs. Littlejohn's argument with respect to request number 9—seeking disclosure of exculpatory evidence—should be noted. In *Brady*, the United States Supreme Court averred:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

*Id.* at 87, 83 S.Ct. at 1196. Commenting on the interplay between Rule 16 and *Brady*, one legal writer has said:

"Since Rule 16(b) clearly permits discovery more broadly than due process requires, in doubtful cases courts should grant discovery sought under the rule and thus avoid the constitutional question. Liberality in passing

---

5. Walsh v. United States, 1 Cir. 1967, 371 F.2d 436, 437, cert. denied, 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 ("Even as amended these rules give no automatic right to a defendant.") ; United States v. Roberts, S.D.N.Y.1966, 264 F.Supp. 622 (Under Rule 16(a) the defendant need not advance a "compelling" reason for discovery, but some showing must be had.).

6. It has been held that the Government is under no duty to reveal a list of witnesses in non-capital cases (*E. g.*, United States v. Chase, 4 Cir. 1967, 372 F.2d 453) and for reasons related to public policy need not disclose informers absent a showing of particular need. *E.g.*, Jimenez v. United States, 5 Cir. 1968, 397 F.2d 271.

Similarly, it has been held that grand jury minutes need not be disgorged unless the defendant makes a showing of some peculiar materiality. *E.g.*, Ingle v. United States, 9 Cir. 1968, 399 F.2d 690.

on discovery motions under this rule also would be consistent with the Supreme Court's recognition that 'disclosure, rather [than] suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.' "

4 Barron & Holtzoff, *supra* at 65, *quoting from* Dennis v. United States, 1966, 384 U.S. 855, 869, 86 S.Ct. 1840, 16 L. Ed.2d 973.

 Nonetheless, it cannot in good conscience be said that the district court violated the precepts expounded upon in *Brady*. First, the rubric announced therein spoke in terms of materiality. No proof or suggestion of the existence of material evidence tending to exculpate Mrs. Littlejohn was advanced. Second, although he denied request number 9 of Mrs. Littlejohn, the district judge was quick to point out:

"Although the *Brady* doctrine has developed in the context of post-conviction proceedings, it is generally conceded that information having a material bearing on defense preparation should be disclosed well in advance of trial. In light of the work-product and Government-witness exclusions of Rule 16 [(b)], as well as the other factors which may preclude an order granting discovery under that rule, the courts necessarily must rely on the good faith and intelligence of the prosecution in making the appropriate *Brady* disclosures in advance of trial."

(R. at 522). There is no reason to believe that the Government violated that command.[7] In sum, the district court can be sustained though it refused to grant discovery as to exculpatory evidence sought under Rule 16 when, at the same time, it noted the Government's duty to disclose any such evidence. If error, the denial of request number 9 was harmless.

---

**7.** In its brief the Government states that it "had no exculpatory information to reveal * * *." (Appellee's Brief at 10).

In our opinion the rulings of the district court as to matters of discovery are sound, and there is sufficient evidence to sustain the guilty verdict.

Affirmed.