**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Deloy C. ROSS, Defendant-Appellant.**

**No. 74–2969.**

United States Court of Appeals,
Fifth Circuit.

April 21, 1975.

Rehearing and Rehearing En Banc
Denied May 16, 1975.

Joe J. Tritico, Lake Charles, La., for defendant-appellant.

Donald E. Walter, U. S. Atty., L. Edwin Greer, Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendant Deloy C. Ross appeals from a judgment of conviction entered after a jury trial on five counts of evasion of federal income tax. He raises three issues on this appeal: that the trial court improperly denied in part his motion for discovery under Fed.R.Crim.P. 16; that the prosecution failed to fulfill its obligation to disclose evidence favorable to the defense under Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and that the Government denied him due process and violated his Fourth Amendment rights in acquiring from a third party certain papers and records allegedly belonging to him. We affirm the conviction.

I. Factual Background of the Investigation and Trial

In May 1969, two Internal Revenue Service agents interviewed Deloy Ross and told him that they were undertaking an investigation of his tax returns that might lead to criminal charges. After conferring with his accountant and attorney, Ross agreed to permit the agents to inspect and hand copy business records to be provided by him at his accountant's office. These records included accounting books and corporate records of a motel owned by Ross, of Ross Investments, Inc., and of W. C. Ross & Son, a general store partnership between Ross and his father (W. C. Ross) which was dissolved in January 1968. These records were for tax years 1965 through 1969. It was agreed that none of the records thus provided was to be Xeroxed or removed by the IRS agents.

As part of their investigation the IRS agents interviewed defendant's stepbrother, William Taylor. Defendant had sold the store operated under the W. C. Ross & Son partnership to Taylor in 1968, and several boxes containing financial records of the partnership remained there. In September 1970, Taylor took these records to attorneys looking into his claims against his mother's estate. In March 1971, Taylor retrieved some of these records and turned them over to the IRS agents, in response to their request. The agents received the remaining records directly from the attorneys, with Taylor's permission. This investigation culminated in indictments against Deloy Ross for evasion of income tax owed by himself and his wife for 1966, 1967, and 1968, and for evasion of income tax owed by Ross Investments, Inc. for 1968 and 1969.

The Government's case at trial was proved by the "net worth" method, which is used to establish a taxpayer's true income when there is no direct proof of the unreported income. The net worth method involves calculating the taxpayer's assets and liabilities at the beginning of the relevant tax period to establish an initial net worth. The same calculation is performed as to assets and liabilities at the end of the tax period. If the taxpayer's increase in net worth plus his living expenses for that tax period exceed his reported income and cannot be explained by receipt of nontaxable income, the existence of unreported income may be inferred.

Before trial defendant filed a written motion seeking discovery from the Government of

A. All books, records, papers, documents, photographs, tangible ob-

jects and material obtained from or belonging to the accused;

B. Copies of all books, records, papers, documents, photographs, tangible objects and material obtained from or belonging to the accused;

C. All books, records, papers, documents, tangible objects and material from whomsoever obtained which are favorable to the accused on the issue of his guilt or punishment and which will aid him in the preparation of his defense;

D. All books, records, papers, documents and physical material which the Government intends to offer as evidence in this case.

This motion was granted, and the Government provided defendant with a set of computations and data sheets it developed in attempting to establish the amount of unreported income attributable to defendant and his enterprises during the years in question.

Ross sought to rebut the Government's case by asserting that he had a substantial cash accumulation from years prior to the tax years in question, and that he received large cash gifts (several hundred thousand dollars) from his father, W. C. Ross, who died in 1969. The Government sought to refute this assertion by offering the testimony of an IRS agent who had analyzed W. C. Ross' personal income tax returns and the monthly accounting statements of the W. C. Ross & Son partnership from 1952 through 1968. The tax returns for 1952 through 1968 were introduced into evidence,[1] as were the accounting statements of W. C. Ross & Son for 1952 through 1964, except for 1956. Although a few monthly statements for this period were not introduced, the vast majority

were. Defendant made no objection to the introduction of this evidence.

The jury returned a verdict of guilty on all counts. Defendant filed several motions for a new trial, arguing that the Government had seized the records of the W. C. Ross & Son partnership from Taylor in violation of defendant's Fourth Amendment rights and in violation of the Government's agreement with him; also, that the Government had failed to produce materials described in defendant's pretrial motion for discovery, which had been granted by the court, as well as other evidence required to be disclosed under Brady v. State of Maryland, *supra*. These post-trial motions were denied, and defendant brought this appeal.

## II. The Adequacy of Pretrial Discovery

### A. Failure to Raise This Alleged Error at Trial

Defendant argues on this appeal that the trial court partially denied his discovery motion. The record shows, however, that the motion was granted by the trial judge without qualification. Whether an error was committed is, of course, affected by the extent of defendant's efforts, under Fed.R.Crim.P. 16(g),[2] to bring to the court's attention any alleged noncompliance by the Government with his discovery requests.

The records of W. C. Ross & Son were introduced during the prosecution's case. Defendant was aware that the boxes of records stored at his stepbrother's business contained the financial statements introduced into evidence, yet no motion to suppress this evidence was offered until defendant's motion for a new trial, made after the jury's verdict was received and 43 witnesses and 1,300 pages

---

1. The Government also introduced certificates of assessments and payments of W. C. Ross for the years 1941 through 1968. These, in conjunction with the tax returns, showed that W. C. Ross earned $147,000 during that period.

2. Fed.R.Crim.P. 16(g) states, in relevant part:

    If at any time during the course of the proceedings it is brought to the attention of

the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances.

of transcript later.[3] Moreover, during the prosecution's case an IRS agent testified (and defense counsel stipulated) that the stepbrother Taylor was the source of the records.[4]

■ This Court and others have criticized failure to raise alleged discovery errors promptly. *See* United States v. Fink, 5 Cir., 1974, 502 F.2d 1, 7; United States v. James, 5 Cir., 1974, 495 F.2d 434, 436–437; United States v. Baxter, *supra*.[5] Defendant's ample opportunity to ask the trial court to order the Government to comply with his request for documents must be taken into account in determining whether error was committed in denying the motions for a new trial.

### B. The Provisions of Fed.R.Crim.P. 16(b) and the Standard of Review

■ Fed.R.Crim.P. 16(b) provides, in relevant part:

(b) *Other Books, Papers, Documents, Tangible Objects or Places.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable.

The operative terms of the rule are "materiality" and "reasonable." The phrase "the court may order" in the text of Rule 16(b) clearly indicates that the granting of discovery motions is a matter of the trial court's discretion. In judging the correctness of the trial court's conclusion that the evidence not tendered by the Government was not material and that defendant's request for such materials (as clarified and renewed in his motion for a new trial) was not reasonable, we will not interfere with the trial court's ruling in the absence of a clear abuse of discretion. United States v. Stone, 5 Cir., 1973, 472 F.2d 909, 916.[6] We find no abuse of discretion in this regard.

### C. Materiality of the Disputed Documents

■ As a matter of general construction "[t]he measure of discovery permitted by the Rules of Criminal Procedure is not intended to be as broad as in a civil case." Clay v. United States, 5 Cir., 1968, 397 F.2d 901, 915, vac. on other grounds sub nom. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. *See* United States v. Schembari, 4 Cir., 1973, 484 F.2d 931, 935 (fact that photographs in Government's possession were of demonstration during which defendant was ar-

---

**3.** Defense counsel did attempt to lodge a general objection to all documents introduced: "to be certain, Your Honor, if there is anything that the Court ordered them to give us, and if they didn't do it, I want the record to reflect that." Tr. at 381. The prosecution objected, and the court properly treated defendant's objection as applying to the document then being introduced, which is not at issue on this appeal.

**4.** *Cf.* United States v. Hauff, 7 Cir., 1973, 473 F.2d 1350, 1353; United States v. Baxter, 9 Cir., 1973, 492 F.2d 150, 173, where defendants, upon learning that the Government had not complied with their discovery requests, moved for a mistrial.

**5.** *See* United States v. Armes, 6 Cir., 1972, 470 F.2d 1353, 1355; United States v. Cook, 7

Cir., 1970, 432 F.2d 1093, 1101; United States v. Indiviglio, 2 Cir., 1965, 352 F.2d 276, 280. *See generally* Colella v. United States, 1 Cir., 1966, 360 F.2d 792, 800. *Cf.* United States v. Wolfson, 2 Cir., 1969, 413 F.2d 804, 808.

**6.** *See* United States v. Saitta, 5 Cir., 1971, 443 F.2d 830, 831; United States v. Hancock, 5 Cir., 1971, 441 F.2d 1285, 1286; United States v. Baxter, 9 Cir., 1973, 492 F.2d 150, 175; Mullins v. United States, 8 Cir., 1973, 487 F.2d 581, 589; United States v. Smaldone, 10 Cir., 1973, 484 F.2d 311, 320–321; United States v. Newman, 3 Cir., 1973, 476 F.2d 733, 739; United States v. Armes, 6 Cir., 1972, 470 F.2d 1353, 1355; United States v. Lewis, 7 Cir., 1969, 406 F.2d 486, 492; United States v. Jordan, 2 Cir., 1968, 399 F.2d 610, 615; Walsh v. United States, 1 Cir., 1967, 371 F.2d 436, 437.

rested held insufficient to show materiality). There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor. The extensiveness of the material which the Government did produce, United States v. Hildebrand, 5 Cir., 1974, 506 F.2d 406, 409, and the availability of the disputed material from other sources, including the defendant's own knowledge, must also be considered. *See* United States v. Felts, 5 Cir., 1974, 497 F.2d 80, 82.[7]

■ The Government gave defendant a complete summary of the computations and data on which it based its calculation of defendant's net worth and income for the tax years in question. The only point on which the disputed records were relevant was whether Ross' father had sufficient income to be able to make the cash gifts that were the basis of one of Ross' defenses. Defendant's accountant testified that copies of the profit and loss statements of W. C. Ross & Son introduced by the Government, as well as copies of those not introduced from earlier years, were customarily kept on file in the accountant's office. Therefore, it is different to understand how obtaining the Government's copies of these reports could have materially aided Ross' defense, especially since defendant did not dispute the total amount of income attributed by the Government to W. C. Ross as evidenced by the tax returns, certificates of assessments and payments, and the IRS agent's testimony. Documents showing W. C. Ross' income from one source, the partnership, for the months not covered in the Government's proof, would be relevant only if defendant disputed the amount of

income attributable to W. C. Ross from all sources combined. It follows that the receipts and other primary sources from which the tax returns and accounting statements were prepared are also not material, and would only have duplicated the testimony of defendant's accountant concerning his preparation of the returns and statements.

The most persuasive evidence that the trial court did not err in his ruling on this issue is found in defendant's lack of interest in the documents until some of them were introduced at trial. Deloy Ross' testimony shows he was well aware of the contents of these boxes of records. He was also aware that the records were no longer in the store as of the middle of 1971, two years after the IRS began its investigation but nearly two full years before any indictments were handed down.

D. Reasonableness of Defendant's Discovery Request

■ Irrespective of the materiality of the documents requested by defendant, we believe the request was not reasonable, as required by Rule 16(b), under all the circumstances. To be reasonable a request for documents must not be unduly burdensome to the Government, and, equally important, must be framed in sufficiently specific terms to show the Government what it must produce. *See* United States v. Hauff, 7 Cir., 1973, 473 F.2d 1350, 1355. General descriptions of the materials sought and conclusory arguments as to their materiality have been rejected repeatedly as insufficient under Rule 16(b). United States v. White, 5 Cir., 1971, 450 F.2d 264, 267.[8]

■ If a defendant is requesting documents he has never seen, he obvious-

---

7. *See* United States v. Toombs, 5 Cir., 1974, 497 F.2d 88, 93; United States v. Hancock, 5 Cir., 1971, 441 F.2d 1285, 1286–1287; United States v. Bland, 5 Cir., 1970, 432 F.2d 96, 97; United States v. Brawer, 2 Cir., 1974, 496 F.2d 703, 705; United States v. Barnes, 8 Cir., 1973, 486 F.2d 776, 779; Xydas v. United States, 1971, 144 U.S.App.D.C. 184, 445 F.2d 660, 668.

8. *See* United States v. Hughes, 5 Cir., 1969, 413 F.2d 1244, 1254; Downing v. United States, 5 Cir., 1965, 348 F.2d 594, 599; United States v. Moore, 6 Cir., 1971, 439 F.2d 1107, 1108; United States v. Conder, 6 Cir., 1970, 423 F.2d 904, 910; United States v. Evanchik, 2 Cir., 1969, 413 F.2d 950, 953; United States v. Fioravanti, 3 Cir., 1969, 412 F.2d 407, 411; United States v. Jordan, 2 Cir., 1968, 399 F.2d 610, 615.

ly cannot designate specifically the items sought, although a concrete showing of materiality is still required. *See* United States v. Hughes, 5 Cir., 1969, 413 F.2d 1244, 1254. In this case, however, defendant was familiar with the disputed documents and knew they had been removed from their place of storage; yet nowhere in defendant's discovery motion is there any specific mention of these documents.[9] Not until his motion for a new trial did defendant specifically request the documents in question and specifically state why he believed they were material. Under the circumstances, defendant's discovery request was not sufficiently specific to apprise the Government of what was sought or to permit the trial court to determine in a timely fashion whether material evidence had not been produced.

### E. Harmless Error

■ If, contrary to our interpretation of this case, error was committed by the trial court, we are convinced it was harmless. *See* United States v. Hildebrand, 5 Cir., 1975, 506 F.2d 406, 408–410.[10] The evidence of this defendant's guilt is very substantial. The Government showed that Ross had regularly withheld substantial amounts of cash from his business deposits, and had used some of this cash to purchase Treasury bonds (the income from which was not reported) and bank money orders, putting the remainder in a special bank account. Ross' defenses of prior cash accumulation and gifts from his father were refuted by proof that Ross, by his own admission, had invested all of his accumulated cash in his motel business, and by proof that his father had insuffi-

cient income to make the large cash gifts alleged.

■ This Court has held that "an error in administering the discovery rules is not reversible absent a showing that the error was prejudicial to the substantial rights of the defendant." United States v. James, 5 Cir., 1974, 495 F.2d 434, 436. *See* United States v. Miller, 5 Cir., 1974, 500 F.2d 751, 755; United States v. Saitta, 5 Cir., 1971, 443 F.2d 830, 831; Mullins v. United States, 8 Cir., 1973, 487 F.2d 581, 589; United States v. Jordan, 2 Cir., 1968, 399 F.2d 610, 615. In this case the accounting records introduced by the Government, although not produced before trial, were discussed in the IRS agent's report, which was furnished to defendant several days before the records were offered in evidence. Thus, even if the records should have been produced before trial, we believe defendant had sufficient opportunity to consider this evidence, or at least to request more time. *See* United States v. James, *supra*, 495 F.2d at 436–437; Pierce v. United States, 5 Cir., 1969, 414 F.2d 163, 169; United States v. Amabile, 7 Cir., 1968, 395 F.2d 47, 52; United States v. Knohl, 2 Cir., 1967, 379 F.2d 427, 441–442. As for the few monthly reports that were not introduced into evidence, defendant has failed to show any prejudice from not receiving those documents.

■ On the basis of this inquiry into the materiality of the evidence not produced, the reasonableness of defendant's discovery requests, and the possibility of prejudice, we perceive no abuse of discretion in the trial court's refusal to grant a new trial on grounds of noncom-

---

9. We do not believe that defendant's request for all documents "belonging" to him was sufficient to notify the Government that it was being asked for his father's personal records and for the records of a business no longer owned by the defendant. As the District Court noted, whether Ross had legal title to the papers was hardly clear. Moreover, proprietary interest is no longer a relevant criterion under Rule 16(b). *See* United States v. Crisona, S.D.N.Y., 1967, 271 F.Supp. 150, aff'd 2 Cir., 1969, 416 F.2d 107.

10. *See* United States v. Rojas, 5 Cir., 1974, 502 F.2d 1042, 1045; United States v. White, 5 Cir., 1971, 450 F.2d 264, 268; United States v. Hinkle, 1973, 159 U.S.App.D.C. 334, 487 F.2d 1205, 1206–1207; United States v. Hauff, 7 Cir., 1973, 473 F.2d 1350, 1355; United States v. Bryant, 1971, 145 U.S.App.D.C. 259, 448 F.2d 1182, 1184; United States v. DeLeo, 1 Cir., 1970, 422 F.2d 487, 499; United States v. Crisona, 2 Cir., 1969, 416 F.2d 107, 115.

pliance with its discovery order. *See* United States v. Smaldone, 10 Cir., 1973, 484 F.2d 311, 320–321; Meyer v. United States, 8 Cir., 1968, 396 F.2d 279, 283.

## III. Failure to Disclose *Brady* Material

Defendant also contended in his motion for a new trial that the Government had failed to disclose evidence favorable and material to his defense, as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d· 215 (1963). The evidence not disclosed in this case is far different in importance from the evidence prosecutors have been required to divulge under *Brady*. *Cf.* Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) (misidentification of defendant by prosecution witness on an earlier occasion, and diagram of murder scene showing poor vantage point of eyewitness); United States v. Frick, 5 Cir., 1973, 490 F.2d 666, 671 (promise not to oppose probation of Government witness).[11]

▌ Moreover, the trial court examined the documents *in camera* and specifically found that none was exculpatory—a method of dealing with *Brady* contentions that this Court and others have approved. *See* United States v. Sanchez, 5 Cir., 1975, 508 F.2d 388; Flanagan v. Henderson, 5 Cir., 1974, 496 F.2d 1274, 1277; Taglianetti v. United States, 1 Cir., 1968, 398 F.2d 558, 572, aff'd 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969). We find no basis for overturning the trial court's finding. As was true in United States v. Register, 5 Cir., 1974, 496 F.2d 1072, 1081,

[a]n *in camera* examination by the trial judge confirmed the government's

statement that [the evidence in question] contained no exculpatory *Brady* material. We will not go beyond the trial court's finding to encourage shipping prosecutor's files to the appellate court whenever the defense cries *Brady*.

## IV. Government Misconduct in Acquiring the Disputed Documents

▌ Defendant argues that in acquiring the business records from his stepbrother Taylor, the Government broke its promise not to remove or Xerox his records. It is true that breach of a promise made to a defendant by Government officials violates due process in some circumstances. *See* Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); United States v. Scanland, 5 Cir., 1974, 495 F.2d 1104, 1106. In this case, however, there was no such breach. The IRS agents asked defendant for records from 1965 through 1969. He provided these at his accountant's office on the condition that they not remove or copy the records. The agreement clearly related only to those specific records and did not obligate the agents, as defendant argues, to ignore documents discovered through other sources.

▌ The manner in which the records were acquired from Taylor was also entirely proper.[12] The IRS agents secured some of these records from an attorney who handled Taylor's claims against his mother's estate and the remaining records from Taylor himself. Obtaining these documents was proper, because they were undertaken with the consent of Taylor and his attorney. *See* United

---

11. United States v. Tashman, 5 Cir., 1973, 478 F.2d 129 (unspecified promise to coconspirator contingent upon the value of his testimony); Evans v. Janing, 8 Cir., 1973, 489 F.2d 470 (police report stating that an eyewitness had failed to identify a photograph of the defendant); United States v. Poole, 7 Cir., 1967, 379 F.2d 645 (physician's report in rape case concluding there was no evidence of penetration); Barbee v. Warden, Maryland Penitentiary, 4 Cir., 1964, 331 F.2d 842 (ballistics and fingerprint reports showing that a revolver not belonging to the defendant was

used in the crime); United States v. Wilkins, 2 Cir., 1964, 326 F.2d 135 (existence of two disinterested eyewitnesses who would have testified that defendant was not involved in robbery).

12. Because we have concluded that defendant cannot prevail on the merits of this issue, we need not determine whether he has established his standing to contest the searches at issue. *See* Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

States v. Thompson, 5 Cir., 1970, 421 F.2d 373; Holzhey v. United States, 5 Cir., 1955, 223 F.2d 823; United States v. DiPrima, 1 Cir., 1973, 472 F.2d 550; Shorey v. Warden, Maryland State Penitentiary, 4 Cir., 1968, 401 F.2d 474. *Cf.* Comment, Third-Party Consent Searches: An Alternative Analysis, 41 U.Chi.L.Rev. 121 (1973). The trial court correctly found that there was "not the slightest evidence of any overbearing threat, trick or deception on the government's part."

Having reviewed all of defendant's contentions carefully, we find no reversible error.

Affirmed.