**UNITED STATES of America**

v.

**Clair E. GEORGE, Defendant.**

**Crim. A. No. 91–0521 (RCL).**

United States District Court,
District of Columbia.

March 5, 1992.

See also 786 F.Supp. 11.

Craig Gillen, Office of Independent Counsel, Washington, D.C., for U.S.

Richard Hibey, Anderson & Hibey, Washington, D.C., for defendant.

### MEMORANDUM OPINION AND PRETRIAL ORDER # 5

LAMBERTH, District Judge.

This case comes before the court on the defendant's motion to compel the production of certain documents. The defendant, the former Deputy Director of Operations ("DDO") of the Central Intelligence Agency ("CIA") has been indicted for making false statements to Congress and to a grand jury and for obstruction of justice. He asks that the Office of Independent Counsel (IC) make available to him a variety of classified materials, including documents concerning the most sensitive areas of United States covert operations. The defendant argues that these documents are material to his defense and thus must be produced under Rule 16 of the Federal Rules of Criminal Procedure. The Independent Counsel opposes the production because, he argues, the defendant is seeking to obtain documents which have no connec-

tion whatsoever with the offenses with which the defendant is charged; further, the IC reminds the court that it should be cautious in ordering the production of such highly sensitive documents related to the national security of the United States. The court shall consider each of the defendant's requests category by category. For the reasons stated below, defendant's motion to compel shall be DENIED.

## I. Procedural Background

On November 12, 1991, the court ordered the Independent Counsel to produce all of the documents obtained by the defendants and the pleadings in the cases *United States v. North,* Crim. No. 88-0080 (D.D.C.) and *United States v. Fernandez,* Crim. No. 89-00150-A (E.D.Va.). *See* Pretrial Order # 3. In that same order, the court required the parties to submit suggestions concerning how the court could most efficiently handle defendant's outstanding discovery requests. After considering the recommendations of counsel—who indicated that a period of negotiation might be fruitful, the court on November 20, 1991, ordered the parties to attempt to reach agreement concerning discovery with the provision that the defendant should file a motion to compel regarding any documents still in dispute.

The requests derive from letters written by defendant's counsel to the Independent Counsel on September 23, 1991, and October 22, 1991, which delineate 17 categories of documents sought by defendant. After several months of negotiation, the IC and the defendant have agreed to very little. Defendant seeks production of all of the documents in the remaining categories that he requested in the original letters.

## II. Rule 16 of the Federal Rules of Criminal Procedure

■■■ Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure reads:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant. Fed.R.Crim.P. 16(a)(1)(C)

The key issue is whether the documents or other material sought to be produced are "material" to the defense. As the court has previously discussed in its November 12, 1991 memorandum opinion, the materiality requirement is not a heavy burden, but nonetheless the defendant must demonstrate that "pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross,* 511 F.2d 757, 763 (5th Cir.1975), *cert. denied,* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54. The documents at issue must "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal." *United States v. Felt,* 491 F.Supp. 179, 186 (D.D.C.1979). When analyzing materiality, a court should focus first on the indictment which sets out the issues to which the defendant's theory of the case must respond. *See United States v. Poindexter,* 727 F.Supp. 1470, 1473 (D.D.C.1989), *rev'd on other grounds,* 951 F.2d 369 (D.C.Cir.1991). An "abstract logical relationship to the issues in the case" is not, however, sufficient to force the production of discovery under Rule 16. *Ross* 511 F.2d at 762. Materiality is, to some degree, a sliding scale; when the requested documents are only tangentially relevant, the court may consider other factors, such as the burden on the government that production would entail or the national security interests at stake, in deciding the issue of materiality. *See id.* at 763; *Poindexter,* 727 F.Supp. at 1473. It may also be relevant that the defendant can obtain the desired information from other sources. *See Ross,* 511 F.2d at 763.

## III. General Comments

The court first must register its frustration at the length of time that this process

has taken. The parties have negotiated for several months to almost no avail. The defendant has not refined his requests for documents at all; he continues to seek literally millions of documents not related to the Iran–Contra affair in any way, though defendant maintains that they may be material to his defense. Defendant does not even allege that the documents might adduce other, relevant evidence. Defense counsel quite candidly admits that the production of these documents might make the defendant immune to prosecution. *See* Transcript of February 14, 1992, Evidentiary Hearing at 9. The court knows of no provision in law that provides for either functional or actual immunity for this defendant.

Defendant's overriding justification for the production of these documents is that they will help him to present his "universe" as DDO. Yet he cannot possibly require all of these documents to create this universe, and, indeed, it is simply not true that these documents, if presented to a jury, would establish the context in which the defendant operated. The reports, cables, personnel files, etc., created by other people and about other people which were sent through his office tell only very little about the job of the DDO. If defendant seeks to make a limited point concerning the day-to-day tasks of the DDO, including the sort of information which passed over his desk or even the volume of that information, then he may do so, but he certainly does not require documents containing the most highly classified information in the United States to do so. Further, defense counsel has made no attempt to hone his requests or limit them to fewer documents that could serve as examples for the points which he wishes to make.

In his reply and his oral argument, defense counsel cites repeatedly to *United States v. Fernandez*, 913 F.2d 148 (4th Cir.1990), for the proposition that he must be able to discover documents concerning the context in which he worked. In *Fernandez*, the court said:

The nature of the charges against him demand that he be able to place his job before the jury in a concrete, palpable context, and that he be able to explain his understanding of the world in which he worked. Only against such a background could the jury realistically and fairly evaluate his allegedly false statements. *Id.*, at 164.

Comparison of Fernandez's requests to those of this defendant demonstrate, however, that the *Fernandez* opinion is inapposite. The defendant in *Fernandez* requested a narrow array of documents which were directly related to the CIA's involvement with Contra resupply. Further, Fernandez sought these documents to show the truth of his allegedly false statements. In this case, the defendant demands the production of vast numbers of documents that have no connection to Iran–Contra simply to describe the "context" of all of his activities as DDO, not just those involved with Iran or Nicaragua or the Contras. These documents would have only the most minimal impact on a jury's ability to "realistically and fairly evaluate his [Mr. George's] allegedly false statements." *Id.*

Defendant claims that he is in a difficult position: he must prove the negative—that he had no knowledge of certain information when he testified and that he had no intent to lie. Yet defendant's response to this predicament is to attempt to prove the negative by proving everything else—that he had knowledge of lots of information which had nothing to do with Iran–Contra. Knowledge of other information does not prove a lack of knowledge about the issues in this indictment. The defendant mentions "critical" times and "flaps," situations where something has gone wrong with a field operation. He has suggested that he might have been "preoccupied," but he has never specified when these things occurred or how these instances might be material to this indictment.

Defense counsel also repeatedly admonishes the court not to look ahead to the Classified Information Procedures Act ("CIPA") hearings in which the court will determine what the defendant requires for his defense and hence what the government must declassify in order to proceed; yet, at the same time, defense counsel re-

minds the court that it will have another opportunity to consider the relevance of these documents during the CIPA process. Thus, documents discovered now may never make it to trial. The court cannot help but look ahead, given the fact that granting defendant's motion would grind this case to a halt. The CIA and the IC would spend months searching for all of the documents contained in defendant's burdensome requests and the defense team would request even longer to peruse them. The court would then be saddled with a nightmarish CIPA notice which would burden the prosecution, various government agencies, the Interagency Group, and the court. These concerns are somewhat relevant to the court's decisions, particularly when the materiality of the documents to the case at issue is slim to none. Just as the court's and the public's interest in an expeditious end to this trial counselled the court to order production of the *North* and *Fernandez* documents, those same factors demand that defendant's motion here be denied.

## IV. Specific Document Requests

### A. Presidential Findings

 In order to go forward with a covert operation, the CIA must have the approval of the President. This approval is set forth in a document called a Presidential Finding. These Presidential Findings define the goals and scope of a particular CIA activity. The defendant seeks to compel the production of three types of documents related to these Findings. First, defendant requests all of the Findings themselves on every covert operation conducted throughout the world during the period in which the defendant was the DDO. Second, the defendant seeks all documents created for the planning group meetings that considered the Presidential Findings. Lastly, the defendant seeks all CIA directorate of Operations [Redacted] cable traffic concerning these Presidential Findings.

The defendant's proffer of materiality is that these documents will aid the defense in demonstrating "the nature of CIA covert action operations for which he was responsible and their breadth." Def. Mem.Supp.Mot. Compel at 7. In addition, the documents would show the priorities of the CIA during Mr. George's tenure as DDO. The defendant hopes to use all of these documents to show that there were so many areas of covert action over which he had responsibility that it would be understandable if he lacked knowledge in a discrete area, particularly one where the National Security Council ("NSC") was playing the dominant role.

The IC has already produced or is in the process of producing the eight Presidential Findings related to either Iran or the Contras. In addition, the IC has produced or will produce all of the deliberative and advisory documents related to each Finding. Further, the IC has provided the defendant with over 5,600 cables slugged [1] [Redacted] which concern CIA support for certain activities directed at Nicaragua. The IC, however, objects to the production of similar documents concerning all of the Presidential findings over the period in which Mr. George served as DDO.

The court concludes that the defendant has not met his burden of materiality with respect to any of the documents related to Presidential Findings for non-Iran-Contra activities. In its November 12, 1991, opinion, the court criticized the Independent Counsel for disingenuously suggesting that there is no such thing as an Iran–Contra case. *See* November 12, 1991, Memorandum Opinion at 5. The court now must reject the defendant's attempt to turn an Iran–Contra case into a three-ring circus involving *all* of the CIA's covert activities throughout the world. Such an absurdly overbroad request for documents *admittedly* not related to Iran-Contra in any way is nothing less than an attempt to put all of the CIA's activities on trial—a trial which, because of the country's interest in secrecy regarding covert operations, would never occur.

---

**1.** "Slugged" means "captioned" in the CIA's parlance and generally refers to an identifier in a cable which denotes its specific origin.

The defendant hopes to use the documents to describe what his job was all about, its demands and its priorities. Defendant is arguing that everything he knew[2] about any topic related to CIA covert actions is relevant and material to what he knew about Iran–Contra and what his intent was. Evidence concerning the "context" of his job as DDO, particularly the massive documentary support by which defendant seeks to describe his day-to-day activities, will not "substantially alter the quantum of proof in his favor." *Ross*, 511 F.2d at 763. Indeed the court concludes that, at best, such evidence is only abstractly related to the issues raised in the indictment. *See id.* at 762. The logic of defendant's request would make everything about the defendant's life—from the traffic he faced in the morning every day while he was DDO to what he had for dinner every night for four years—material to his defense because it describes the context in which he worked and things which might have occupied his mind.

Defendant's final argument is that a comparison of the Presidential Finding of January 17, 1986 concerning Iran with other Presidential Findings shows that it was unusual because it placed the NSC in charge of the covert operation. He argues that he needs all of the other Presidential Findings to make this comparison. The IC notes that he already has other Presidential Findings with which to make the comparison and he can also do so with the testimony of the defendant and other witnesses as to the normal practice of running a covert operation. Defendant has never indicated that he cannot make this comparison with the documents he already has and the testimony of witnesses. Given that he apparently can make such a comparison, the court cannot justify forcing the government to produce the documentation that authorized all of the United States covert operations over a three-year period. The documents include some of the country's most sensitive secrets. In addition, defendant would saddle the government with the production of over one million cables. Because the documents are marginally relevant at best[3] and all other factors counsel against compelling production, *see Poindexter*, 727 F.Supp. at 1473, the court shall deny defendant's motion to compel as to Document Requests # 1, # 2, and # 3.

## B. Defendant's Personal Cable Traffic

■ The defendant seeks production of all cable traffic, slugged [Redacted] which was specifically directed to his office while he served as DDO. In addition, defendant asks for access to all Restricted Handling cable traffic which was received by his office over the time period that he was DDO; Restricted Handling cable traffic concerns the CIA's most sensitive foreign informants. The defense admits that these cables were generally extremely important (and often sensitive) messages and states that Mr. George either would have read them himself or been briefed about their contents.[4] The defense believes that these cables will reveal few, if any, references to arms shipments to Iran or Contra resupply. Nonetheless, they claim that the cables will help the defense to demonstrate the vast array of key government operations with which Mr. George was involved. Defendant hopes to add credibility to his assertion that he knew nothing about certain aspects of the Iran–Contra affair by showing the thousands of cables which did not

---

**2.** While defendant may have read all of the requested Presidential Findings, there is no reason to believe that he was aware of the contents of all of the documents and cables. Thus defendant is arguing that everything he knew or could have known is material to his defense.

**3.** The court believes that, even under the defendant's own standard for materiality—that the document be helpful to the defense, *see United States v. Fernandez*, 913 F.2d 148, 155 (4th Cir. 1990), the defendant has not met his burden.

**4.** Defendant argues that he should have access to these documents so that he can sharpen his memory about events that occurred several years ago; he compares himself to an ordinary business executive seeking access to his personal files. Defendant does not, however, make clear why he needs to refresh his memory about every CIA activity during his tenure, especially since the cables which he seeks at this time have nothing to do with the offenses with which he is charged.

refer to Iran–Contra. Defendant also hopes to establish a "preoccupation" defense, showing that the multitude of pressing matters which his job entailed would explain his lack of knowledge in one particular area. As such, defendant argues that this personal cable traffic is relevant to show knowledge, motive, and intent.

Defendant's argument that these cables would help him to describe his job [5] and to demonstrate the kind of information that he reviewed daily fails once again to satisfy the burden of materiality. Defendant complains that he should not be forced to present his universe as DDO in a vacuum, but it is almost impossible to see how all of these documents describe his job at all—they are the reports of other people who are doing their job. The only way they relate to his job is if he testifies as to how he would respond to a given piece of information. This requires his testimony, but not cables concerning every foreign informant the government has. Similarly, if the defendant wants to show how information was processed by the DDO, he has to testify to it or others do—the documents themselves reveal nothing.

Defendant states that these documents may show his lack of knowledge of the Iran–Contra affair. The defendant cannot establish, however, that, because much of the cable traffic that passed across his desk did not refer to matters relating to the Iran–Contra affair,[6] he did not know anything about it. That is, in essence, what defendant wants these documents for. He has no need for the substance of these documents if wishes to state that they did not say anything about Iran–Con-

tra; if they did, presumably the government would seek to introduce them (or at least have already produced them to defense counsel). Unlike the arguments that defendant makes concerning his need for other Presidential Findings, defendant does not even suggest that he could glean any information, or develop any evidence or make any comparisons from these documents that would be relevant to the trial. Defendant states that he wants to show how much information he had to digest as DDO.[7] To make this point, the defendant would have to introduce all of the cables at trial—some 100,000 Restricted Handling cables concerning incredibly sensitive material and untold numbers of privacy channel cables.[8] Since the court is not about to permit this fiasco, it does not see how this mass of information, none of which is related to the Iran-Contra affair[9] or this indictment, is material to the defense. Thus, Document Requests # 4 and # 5 shall be denied.

### C. Privacy Cable Traffic Regarding Geographic Division Operations

█ Defendant requests all Privacy Channel traffic between CIA headquarters and all of the CIA's operations directorate geographic regions throughout the period that defendant was DDO. Defendant states that he needs these cables to help him remember the operations carried on under his auspices and further that the cable traffic will illustrate his functions at the CIA. Defendant hopes to use these documents to show that, as DDO, he ran covert operations throughout the world for the CIA, but would not necessarily have

5. Seen in its best light, defendant seeks to obtain visual aids so that he may show a jury what sort of documents came across his desk. He has never indicated why the documents he already possesses or a limited number of documents could not achieve the same objective. Defendant expresses concern that, if he used the documents that he currently has, a jury might think that his entire job concerned Iran–Contra, but surely he does not need access to documents concerning every other facet of that job to make his point.

6. If defendant's real concern is to show how many documents he saw everyday and how few

mentioned Iran–Contra, then defendant needs a ballpark figure of the number of documents at issue, not the documents themselves.

7. Defendant admits that he read or was briefed on all of this information so it is not clear how these cables could be material to an assertion that he did not know about certain information regarding Iran–Contra.

8. [Redacted].

9. The IC has already produced all relevant cables in these two document categories.

detailed knowledge of operations run by the NSC. In addition, Mr. George seeks access to these documents to show the "fluidity" of reports from the field; reports from the field must be checked against other data in order to insure their accuracy. He alleges that these documents will show how his office dealt with "flaps," incidents which often involve threats to CIA operations and field personnel. Defendant believes that he can demonstrate that the information received by CIA headquarters is often confused when a flap first arises and that the CIA would not divulge the information until the situation could be sorted out. Mr. George appears to be suggesting that, if he hedged in answering Congress' questions, his goal was not to deceive, but rather to wait until he had reliable information on the subject. Such information, according to defendant would go to his motive to lie to Congress and his specific intent under the statute.

The court will dispense with the defendant's context argument by simply referring to its comments above. The defendant has not met his burden of materiality under Rule 16; his knowledge of all of the rest of the CIA's covert activities is not material in itself to his asserted defense of a lack of knowledge about Iran–Contra. Similarly, he cannot demand production of irrelevant documents to refresh his memory about operations not at issue in this case. Mr. George's explanation of the "fluidity" of reports from the field and the confusion of reports concerning flaps do not make every cable to and from a field office into evidence material to his defense. He has never identified any flap that might be connected to this case or suggested any instance where information changed due to the fluidity of reports. The burden is on the defendant to show that these cables are material and he has not satisfied his burden. Document Request # 6 shall be denied.

### D. Operational Meeting Records

Defendant moves to compel the production of all notes and memoranda prepared by Mr. George's subordinates following their weekly meetings with Mr. George

for the entire time that defendant was DDO. He argues that these documents would describe the universe of the DDO's activities and explain the level of detail that Mr. George might have known about any given operation.

As the court has repeatedly stated, the materiality hurdle cannot be overcome by a demand for vast numbers of documents not relevant to the issues in the case simply because the defendant had occasion to participate in these meetings as a part of his job. Defendant can explain the universe of his job, but all of the reports about all of the meetings during his tenure are not material to his universe or to this case. Document Request # 7 shall be denied.

### E. Personnel Related Meeting Records

The defendant also asks for all of the notes, memoranda, and official documents generated by certain subordinates of Mr. George following their scheduled meetings concerning personnel matters. Mr. George believes these documents will show how much time he spent on personnel related matters; the jury may credit a lack of knowledge and intent to the defendant after they see the enormous amount of time he spent on other issues. In addition, he argues that these documents help to flesh out the universe in which Mr. George operated as DDO. For the reasons stated above, Mr. George's "preoccupation" and "universe" arguments do not make out a case for materiality. The court finds it especially unreasonable that the defendant seeks discovery from over [Redacted] personnel files, containing intimate personal details about thousands of CIA employees, as material to his defense for charges of giving false testimony. Therefore, Document Request # 8 shall be denied.

### F. Communications with Congress

The Independent Counsel has agreed to turn over documents relating to Document Requests # 9, # 10, and # 11 from defense counsel's September 23, 1991 letter; these requests shall therefore be denied as moot. Defendant's supplemental

document request seeks access to all transcripts, tapes, notes, reports, and memoranda concerning the briefings which Mr. George might have conducted before the House and Senate Select Committees on Intelligence from July 1, 1984 to November 30, 1986. In addition, defendant requests all transcripts, tapes, notes, reports, and memoranda which the CIA possesses concerning telephone conversations between members of Congress and their staffs and officials of the Sandinista government. As to the briefings given by Mr. George, defendant seeks to use these documents to compare his responses to Congress in other cases to his responses given at the time he allegedly made false statements. Defendant hopes to show that he routinely deferred answering questions when he did not have sufficient information and thus that, on the occasion for which he was indicted, he had no intent to lie. Defendant demands information regarding telephone calls between members of Congress (or their staffs) and Sandinista officials to show that Mr. George had no motive to lie because Congress already knew about Iran–Contra.

Once again, the court rejects the defendant's "context" argument. How he dealt with Congress at times other than those involved in the indictment is not material to whether he lied to Congress in a given situation. Indeed, it is unlikely that the defendant would be permitted to use such evidence at trial because a defendant cannot use evidence of a prior course of conduct to prove that he acted in conformity therewith. *See* Fed.R.Evid. Rule 404. In addition, Rule 16 generally does not permit the discovery of oral statements "unrelated to the crime charged or completely separate from the Government's trial evidence." *United States v. McElroy,* 697 F.2d 459, 464 (2d Cir.1982).

The question of Congress' knowledge and its relevance to defendant's knowledge is a closer question. In *United States v.*

*Poindexter,* 727 F.Supp. 1470 (D.D.C.1989), Judge Greene permitted discovery concerning the knowledge of others involved in Iran–Contra because such discovery might tend to show that the defendant had no intent to conceal information and that he thought his actions were legal. In *United States v. Secord,* 726 F.Supp. 845 (D.D.C. 1989), former Chief Judge Robinson denied this sort of discovery to the defendant on the grounds that the defendant had not been able to establish (nor had even proffered) that the defendant *knew* what information others had. Without this crucial link, the discovery was not material to the defense because it revealed nothing about the defendant's state of mind. This court believes that Judge Robinson has the better of the argument. It is immaterial what Congress knew unless the defendant was aware of their knowledge. Indeed, even were the defendant aware, it is unclear how that would affect the charges; neither side has fully briefed whether knowledge that Congress is aware of some fact is a defense to lying to Congress on the record about that fact.[10] Defendant has not proffered that he knew that Congress knew, so it does not appear that such communications between Congress and the Sandinistas is material to his state of mind. Thus, both Supplemental Requests # 1 and # 3 shall be denied.[11]

### G. Agency Investigative Reports

The defense and the IC appear to have reached an agreement on this category of documents and the defendant has withdrawn the requests for these documents.

### H. Jencks Act Material of Alan D. Fiers, Jr.

The IC is not under any obligation to produce material under the Jencks Act, 18 U.S.C. § 3500(a) (1988) until a witness testifies on direct examination at trial. The IC has agreed, however, to produce the state-

---

**10.** It would seem in any case that, if some members of Congress knew and others did not, there could be no such defense.

**11.** The IC has already complied with the defendant's Supplemental Request # 2, which sought

telephone logs of conversations between CIA headquarters and CIA employees abroad concerning Iran or the Contras.

ments and testimony of Mr. Fiers ten days before trial, at which time the defense should turn over its reciprocal-Jencks material. The court shall deny the defendant's request for production of the documents at this time, although the IC shall be expected to turn over this material ten (business) days prior to trial.

## V. Conclusion

The court does not know how it could have deemed any of defendant's vastly overbroad document requests to be material to his defense. Defendant asks the court to be permitted to search for a needle in a haystack of the country's most classified secrets, without the slightest indication of what the needle might be and how it might be material to his defense. Defendant has had four months to narrow his requests, but has not budged an inch; it is not the court's task to do this for him. The court will not reward this intransigence by permitting the discovery of a vast array of immaterial documents with the slim (and vague) hope of finding a material one. Defendant's own unreasonableness and refusal to compromise (or even argue in the alternative for anything less) force this court's result. Rule 16 does not permit a scattershot approach by which a defense counsel can demand from the government anything that he dreams up. Defendant's motion to compel the production of documents is DENIED. This opinion and order shall be filed under seal until such time as the Interagency group can complete the classification process and redact such portions as would make this opinion and order unclassified.

SO ORDERED.