## UNITED STATES of America

### v.

### W. Mark FELT and Edward S. Miller.

### Crim. No. 78–00179.

United States District Court, District of Columbia.

Dec. 21, 1979.

---

and Miller. Two such requests, Miller's request # 11 and Felt's request # C–4, were directed at materials reflecting the foreign activity of the Weathermen Organization, including foreign travel and contact or collaboration with foreign powers or agents.[1] This court considered these materials relevant to the defendants' asserted defense of reasonable reliance on the authority of superiors. *See United States v. Barker,* 546 F.2d 940 (D.C.Cir.1976).

In particular, part (d) of Miller's request # 11 asked for "[a]ny and all reports of foreign law enforcement or governmental agencies including but not limited to the Royal Canadian Mounted Police;" Felt's request # C–4 encompassed all "[d]ocumentary materials made and maintained or received by the Justice Department and the FBI in the ordinary course of business. . . . ."

On December 13, 1978, defendant Miller filed a motion to compel discovery of material relating to the foreign activity of the Weathermen Organization. The motion alleged that the government had failed to produce documents received from foreign intelligence agencies and the NSA falling within the scope of Felt and Miller's discovery requests # C–4 and # 11. The government failed to respond directly to this motion; it did, however, continue to challenge the applicability of the *Barker-Martinez* defense underlying the defendants' discovery claim. During a hearing among the parties, this court ruled that the *Barker-Martinez* defense was available to defendants Miller and Felt. Transcript of Hearing, 2/22/79, at 57–58.

On March 30, 1979, counsel for the government advised this court that although "[t]he government has completed its discovery," "some dispute will remain as to the adequacy of the government's compliance with discovery and that *in camera* resolution of those disputes by the court will be necessary." Letter from F. J. Martin to Chief Judge William B. Bryant

John W. Nields, Jr., Sp. Counsel, Francis J. Martin, Daniel S. Friedman, Trial Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Brian P. Gettings, Frank W. Dunham, Jr., Mark D. Cummings, Leonard, Cohen, Gettings & Sher, Washington, D. C., for Felt.

Thomas A. Kennelly, Howard S. Epstein, Dinguid, Siegel & Kennelly, Washington, D. C., for Miller.

## MEMORANDUM AND ORDER

BRYANT, Chief Judge.

### A

On August 17, 1978, this court, pursuant to Fed.R.Crim.P. 16(a)(1)(C), granted certain discovery requests of defendants Felt

---

1. Miller's request # 11, as limited by this court, is directed at FBI and Justice Department documents Miller might have come in contact with while serving with the agency. Felt's request was directed only at FBI and Justice Department material.

(3/30/79). On April 4, 1979, defendant Miller moved to dismiss the indictment for failure to produce material received from foreign intelligence sources and the NSA relating to the foreign activity of the Weathermen; defendant Felt filed a similar motion on April 6, 1979.[2]

The government responded by filing a Motion to Modify the August 17, 1978 discovery order.[3] This court was asked to relieve the government from complying with Miller's discovery request # 11(d) or any portion of his request # 11 or Felt's request # C–4 requiring the production of documents or information obtained by the FBI from cooperative foreign intelligence agencies. According to the government, such documents and information were submitted to the FBI pursuant to strict understandings that they would not be disclosed to anyone outside the Executive Branch without consent of the foreign source.[4]

In support of its motion, the government distinguished two types of documents or information received from foreign sources: material disclosing contact or collaboration between the Weathermen and hostile foreign powers and material resulting from the general surveillance and investigation of Weathermen fugitives and other suspected "hippies" by intelligence agencies of the host foreign country. The government concedes the relevancy of this first category. The Attorney General, however, has submitted *in camera* affidavits stating that disclosure of such documents (or information contained in the documents) other than in an *ex parte, in camera* showing to this court, would adversely affect the national interest by severely impairing vital relationships with foreign intelligence agencies.

The government has delivered approximately 38 documents falling under this claim of privilege to this court for *ex parte, in camera* review.[5] Accompanying 25 of the documents are memorandum, reports, and other material from non-privileged *domestic* sources. The government claims that these discoverable domestic sources provide the defendants with "parallel" or partially "parallel" information, thereby amounting to adequate compliance with the discovery requests. Although no "parallel information" of any type could be found for the remaining 13 documents, the government has submitted admissions conceding relevant facts that also appear in most of the material.

The government has also delivered to this court for *ex parte, in camera* review approximately 900 documents or information from foreign agencies pertaining to general surveillance and investigation of Weathermen in the host foreign country. These documents are first alleged to be irrelevant and immaterial to the defendants' case; if the court should find the opposite, the government had indicated its intent to assert a claim of privilege identical to the one described above.

On June 5, 1979, defendant Miller filed a motion to produce the specific understandings with foreign agencies prohibiting disclosure of intelligence information or material forwarded to the FBI.[6]

### B

The defendants have developed two complementary legal arguments, each in the end resting on the asserted importance of material from foreign agencies for the elab-

---

**2.** Defendants' discovery requests directed at material sent by NSA to the FBI were resolved during an *in camera* hearing among the parties. Transcript of Hearing 3/16/79, at 18, 37.

**3.** The motion was filed under seal.

**4.** During an *in camera* session, counsel for the government stated that the agreements permit disclosure only to current members of the intelligence community. Transcript of Hearing, 8/30/79, at 32. The government has asked the respective foreign intelligence agencies to dis-

close the disputed material. The agencies have refused.

**5.** Twenty documents were submitted to this court in April 1979. Subsequent submissions have raised the total to 38.

**6.** The government has since indicated that these understandings are not in writing. Government's Response to Miller's Motion to Produce "Specific Understandings With Foreign Government Agencies" at 1 (under seal).

oration of their *Barker-Martinez* defense. Defendants argue that the government's motion to modify the discovery order of August 1978 is premised on a faulty claim of privilege, an improper use of *ex parte, in camera* procedures, and shields material at the heart of their defense. Their motion to dismiss the indictment stresses the latter point, implicitly accepting the claim of privilege but relying on the doctrine developed by Learned Hand in *United States v. Andolschek*, 142 F.2d 503, 506 (2nd Cir. 1944): the government cannot choose to prosecute an individual while erecting a claim of privilege to hide material relevant to the defense.

It appears most logical to address first the validity of the asserted privilege and the *ex parte, in camera*, procedures adopted to determine its applicability and impact. If the privilege and procedure are legally permissible, this court must then determine whether the nature of the desired material requires a choice between dismissing the indictment or refusing to modify the August 1978 discovery order.

### 1. The Claim of Privilege

 The affidavits submitted by the Attorney General comply with the procedural requirements set forth in *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953) (formal claim of privilege must be lodged by head of department after "actual personal consideration by that officer"). The defendants attack the substance of the asserted privilege. They stress the failure of the Attorney General to specifically invoke a claim of "state secrets." Defendant Miller's Opposition to Government's Motion to Modify at 6–7. Moreover, they claim that the defendants viewed much of the material while employed at the FBI, thereby making the present attempt to prevent disclosure unreasonable and unnecessary. *Id.*

The defendants' suggestion that the claim of privilege somehow lacks potency because the Attorney General failed to recite the words "state secrets" is unconvincing. His affidavit states that disclosure of the material would adversely affect relationships with foreign intelligence agencies that are essential to our national security interest. This type of determination, by a key figure in the Executive Branch, falls well within those "areas of Art. II duties [to which] the courts have traditionally shown the utmost deference." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). *See United States v. Reynolds*, 345 U.S. 1, 10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953) (determination by Secretary of Air Force that exposure of military matters would jeopardize national security).

Defendants' claim that Miller or Felt might have viewed the material in the past does nothing to vitiate the asserted privilege. Protection of sources, not information, lies at the heart of the claim by the Attorney General.[7]

The government has indicated that the agreements with foreign agencies permit disclosure only to present members of the intelligence community, on a "need to know" basis. The respective foreign agencies whose information is at issue in this case have not consented to disclosure. In short, neither the manner in which the privilege is asserted nor the prior exposure of the material to the defendants renders the claim of privilege invalid.

### 2. In Camera, Ex Parte, Review of the Material

#### a. Documents Claimed to be Immaterial

 As discussed earlier, *supra* at 182, the government has designated a number of documents containing information from foreign intelligence agencies as immaterial or irrelevant to the defendants' case. The government contends that these documents merely disclose efforts by foreign intelligence agencies to record the activities of Weathermen and other suspected radicals,

---

**7.** The importance of this objective has been stressed recently by intelligence agencies in other contexts, and has met with court approv-

al. *See Hayden v. NSA*, 608 F.2d 1381 at 1385 (D.C.Cir.1979).

and do not expose contacts between Weathermen and agents of hostile foreign powers. At the request of this court, the documents have been submitted for *in camera, ex parte* review.

Although the original discovery order in this case encompassed all aspects of the foreign conduct of the Weathermen Organization, *e. g.* foreign travel and correspondence, Fed.R.Crim.P. 16(d)(1) allows for modification upon a sufficient showing. *In camera ex parte* presentation of disputed material is recognized as an appropriate means of establishing such a showing. *United States v. Pelton*, 578 F.2d 701, 707 (8th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). Such a procedure need not be triggered by a formal claim of privilege, *supra* at 182; it is also justified when the sensitive nature of the disputed material is apparent. *Id.* at 707 (material disclosed identity of individuals cooperating with government on criminal prosecution); *United States v. Buckley*, 586 F.2d 498, 506 & n.6 (5th Cir. 1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979) (defendant sought production of FBI investigative files). The agreements covering the use and dissemination of information received from foreign intelligence agencies lead this court to conclude that *in camera, ex parte* review of the material will best serve the public interest. *See United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979).

The adoption of *in camera, ex parte* procedures does not threaten the defendants' constitutional right to exculpatory material, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or their statutory right to material evidence, Fed.R.Crim.P. 16(a)(1)(C). Defendants' reliance on *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) and its progeny is misplaced. *Alderman* involved determining whether certain evidence was "tainted" as a result of fourth amendment violations and vulnerable to a motion to suppress; a determination that the Court stressed was subtle, complex and prone to error when performed without the defendant. 394 U.S. at 181–82, 89 S.Ct. at 970–971.

The present case, however, requires determinations of exculpation and materiality. In *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 2398–2399, 49 L.Ed.2d 342 (1976), the Court foresaw the use of *ex parte* proceedings as a permissible means of uncovering exculpatory and material information. This approach has been widely used by the lower courts before and after *Agurs*. *See, e. g. United States v. Loman*, 551 F.2d 164, 166 (7th Cir.), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977); *United States v. Ross*, 511 F.2d 757, 765 (5th Cir. 1975), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

This court has been apprised of the essential elements of defendants' *Barker-Martinez* defense in a number of pleadings submitted in the case, as well as from long *in camera* hearings. In light of this background, and the experience of this court in disposing of discovery requests, it is doubtful that *ex parte, in camera* review will in any way prejudice the defendant.

b. *Material Falling Under the Asserted Privilege*

■ The government has voluntarily submitted this material to this court for *in camera, ex parte* review. In the present case, this procedure is necessary to determine whether invocation of the privilege is proper. *United States v. Reynolds*, 345 U.S. 1, 10–11, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953). The defendants claim the material in the face of a criminal prosecution; this amounts to a "showing of necessity" sufficient enough to require this court to examine the material and insure that it contains information originating from foreign intelligence sources. *Id.* at 11, 73 S.Ct. at 533. It does.

■ *In camera, ex parte* review is not just necessary to insure that the material properly falls within the asserted privilege. The defendants have moved to dismiss the indictment for failure to comply with discovery. Thus, the court must evaluate now the importance of the disputed material

within the context of this case. The standards associated with such a review are discussed in the succeeding section. Of present interest is the defendants' claim that they have a right to examine privileged material and argue about its impact on this case.

It is obvious that "the security which the privilege is meant to protect," *United States v. Reynolds*, 345 U.S. 1, 10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953), will be jeopardized if defendants participate in an *in camera* examination of the material. *In camera, ex parte* review has been approved in a number of criminal and civil cases involving general discovery requests aimed at sensitive materials, *In re Attorney General*, 596 F.2d 58, 60 (2nd Cir. 1979) (civil) (FBI files), *cert. denied sub nom., Socialist Workers Party v. United States Attorney General*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); *United States v. Boyce*, 594 F.2d 1246, 1252 (9th Cir. 1979) (criminal) (national security material); *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979) (criminal) (FBI files); *United States v. Ehrlichman*, 546 F.2d 910 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977) (criminal) (tapes of Presidential conversations). The approach also has been adopted with discovery requests made in conjunction with motions to suppress. *United States v. Lemonakis*, 485 F.2d 941, 962–63 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974); *United States v. Humphrey*, 456 F.Supp. 51, 59 (E.D.Va.1978). *In camera, ex parte* review has also been contemplated as a means of implementing subpoenas directed at sensitive material for use at trial, *United States v. Nixon*, 418 U.S. 683, 714–715, 94 S.Ct. 3090, 3110–3111, 41 L.Ed.2d 1039 (1974), or grand jury proceedings, *Nixon v. Sirica*, 487 F.2d 700, 720–21 (D.C.Cir.1973).

The fundamental difference between the type of review at issue in *Alderman* and the present case has already been discussed, *supra* at 184. The national security considerations at issue here also counsel against two much reliance on *Alderman*, for when discovery requests touch upon "a field as delicate and sensitive as foreign intelligence gathering," *in camera* procedures may be necessary to determine that the defendants suffer no injustice. *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974).

It is important to note that the *Alderman* Court was not confronted with any claim of privilege, *i. e.*, national security, state secrets, or otherwise. Although the two companion cases involved espionage convictions, the effect on national security of permitting the defendants to examine transcripts of illegally heard conversations was not as clearly delineated as it is in the present case.[8] The existence of a former claim of privilege, raises considerations similar to those presented by Justices Harlan and Fortas in their opinions in *Alderman*, 394 U.S. at 187, 89 S.Ct. at 974 (Harlan, J. dissenting); *id.* at 201, 89 S.Ct. at 981 (Fortas, J. concurring and dissenting in part). Both Justices suggested that *ex parte, in camera* review prevail when a motion to suppress involved serious national security considerations. Their reasoning is persuasive in the context of the present case, when disclosure could jeopardize a number of reliable intelligence sources each capable of delivering a variety of intelligence information. *See United States v. Williams*, 580 F.2d 578, 586 (D.C.Cir.), *cert. denied*, 439 U.S. 832, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978) (in "taint" proceeding under *Alderman* effect of disclosure on national security minimized because limited to " 'defendant's own conversations' " overheard on " 'own premises' ").

This is not to suggest that the interests of the defendants must be sacrificed in the name of national security. In the present case, the government has provided this court with "parallel" and "partially" parallel information, as well as admissions; it is possible to place the information from the

---

**8.** Thus the Court's general pronouncements favoring disclosure in all instances, 394 U.S. at 181, 89 S.Ct. at 970, should not automatically be transposed to the present case.

foreign source alongside the substitute and identify any inadequacies. *Compare with United States v. Alderman*, 394 U.S. 165, 182, 89 S.Ct. 961, 971, 22 L.Ed.2d 176 (1969) (such a comparison not possible when determining the subtle issue of "tainted conversations").

This manner of presentation leads this court to believe that *ex parte, in camera* review will not prejudice the defendant. *Taglianetti v. United States*, 394 U.S. 316, 317–18, 89 S.Ct. 1099, 1100–1101, 22 L.Ed.2d 302 (1969) (task is not "too complex," or "margin of error too great" to prohibit *in camera* judgment of trial court).

### 3. *Assessing the Defendants' Need for Discovery*

Defendants' right to discover documentary material controlled by the government rests on two grounds: the constitutional right to discover exculpatory evidence, as developed in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the statutory right to documents which are material to the preparation of the defense, Fed.R.Crim.P. 16(a)(1)(C).

The Court has recently indicated that the constitutional right is rather narrow, applying only to material that "creates a reasonable doubt" about the defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976). Although Rule 16(a)(1)(C) has at times been interpreted to track closely with the constitutional standard, *see United States v. Ross*, 511 F.2d 757, 762 (5th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975), this court believes that documents are "material in the preparation of the defense" if there is a strong indication that they will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal. *See United States v. Tanner*, 279 F.Supp. 457, 470 (N.D.Ill.1967), *rev'd on other grounds*, 471 F.2d 128 (7th Cir. 1972), *cert. denied*, 409 U.S. 949. 93 S.Ct. 269, 34 L.Ed.2d 220 (1972) (cited approvingly in Notes of Advisory Committee on 1974 Amendments to

Rules of Criminal Procedure, 62 F.R.D. 271, 311 (1975)); Rezneck, *The New Federal Rules of Criminal Procedure*, 54 Geo.L.J. 1276, 1278–80 (1966) (discussing meaning of "materiality" in predecessor to Rule 16(a)(1)(C)); *cf. United States v. Crow Dog*, 532 F.2d 1182, 1189 (8th Cir. 1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977) (no *Brady* violation when undisclosed material would have been used for "minimal" impeachment purposes).

In the present case, the government has asserted that some documents are irrelevant and immaterial to the defendants' case. This court has examined a representative sample of such documents, with the constitutional and statutory standards discussed above in mind. This court believes that this material is not material to the defendants' case, in particular their *Barker-Martinez* defense. Such a defense does not require a general investigation of how friendly governments monitored Weathermen activities. *Cf. Clay v. United States*, 397 F.2d 901, 915 (5th Cir. 1968), *vacated on other grounds sub nom., Giordano v. United States*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969) (defense to violation of Selective Service laws did not require broad investigation into activities and procedures of draft system).

The government has conceded the relevancy of those 38 documents falling under its claim of privilege; it has also attempted to minimize the effect of non-disclosure by claiming that information revealing contacts between the Weathermen and hostile foreign powers is not a "core" issue in the defendants' case. Defendants follow the lead of the government, simultaneously dancing in two different directions. They attack the privilege, and argue that the documents falling under such a claim relate to "core issues" and must be discovered, well aware that prosecutions involving sensitive intelligence information are often dropped by the government because of discovery and trial demands. *E. g., DeChamplain v. McLucas*, 367 F.Supp. 1291, 1293 n.1, 1295 (D.C.D.C.1973). Or, defendants accept the privilege, argue that the with-

held information relates to "core issues," and move to dismiss the indictment.

A satisfactory solution of the problem requires that the "core/non-core, comply or dismiss" approach urged by the parties be jettisoned. Contacts between the Weathermen and hostile foreign powers are clearly important to defendants' *Barker-Martinez* defense, and that defense is as close to the "core" as any other issue in this case. Defendants' right to the material covered by the privilege must be judged in reference to the constitutional standard set forth in *Agurs*, and the statutory standard incorporated in Rule 16. The latter, however, becomes more demanding in the context of a formal assertion of privilege. *United States v. Nixon*, 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974) (Special Prosecutor required to demonstrate that subpoenaed Presidential material was " 'essential to justice of the [pending criminal] case.' "); *United States v. Haldeman*, 559 F.2d 31, 76–77 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (defendant required to show " 'demonstrated, specific need for evidence' " in order for Rule 16 request to prevail over privileged Presidential material) (citing *United States v. Nixon*).

■ This court has examined the 38 documents. Special attention has been given to the demands of the *Barker-Martinez* defense, and information already available to the defendants, *e. g.* "parallel" information, "partially" parallel information, admissions, and documents released earlier in the case. *See United States v. Lee*, 589 F.2d 980, 989 (9th Cir. 1979) (defendant failed to establish that discovery material in his possession was inadequate to support defense). Two documents contain information of extreme importance for the *Barker-Martinez* defense, and appear to meet the heightened standard of scrutiny associated with Rule 16 in cases involving privilege and *Agurs*.

This determination does not require the dismissal of the indictment, as the defendants suggest. Such a result would be warranted only if the court recognizes the government's claim of privilege as absolute, prevailing over the type of showing associated with *Agurs* and a more demanding version of Rule 16. Other claims of privilege have not been afforded absolute status. *United States v. Nixon*, 418 U.S. 683, 711–713, 94 S.Ct. 3090, 3109–3110, 41 L.Ed.2d 1039 (1974) (confidentiality of Presidential conversations); *Roviaro v. United States*, 353 U.S. 53, 62–64, 77 S.Ct. 623, 628–629, 1 L.Ed.2d 639 (1957) (informant's privilege); *Nixon v. Sirica*, 487 F.2d 700, 716–718 (D.C. Cir.1973) (confidentiality of Presidential conversations). And although the Court has never directly addressed the manner in which a "claim of need to protect military, diplomatic, or sensitive national security secrets" is to be balanced against countervailing interests, *United States v. Nixon*, 418 U.S. 683, 706, 712 n.19, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974), this court believes that the present case requires a balancing of interests similar to that found in other cases involving claims of privilege.

Defendants' interest in the two documents referred to eariler, *supra* at 186, is of "constitutional dimensions," *United States v. Nixon*, 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974). The *Agurs* standard is designed to vindicate the due process clause of the fifth amendment, by insuring that the defendant receives all the material necessary for a fair trial. Heightened scrutiny under Rule 16 is designed to identify only material that is of the utmost importance to the defendant and his counsel in the preparation of the defense. "[T]he allowance of the privilege to withhold" such material would "cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." *Id.* at 712, 94 S.Ct. at 3110.

In addition to determining "the inroads of . . . [the] privilege on the fair administration of criminal justice," *id.* at 711–712, 94 S.Ct. at 3109, this court must also determine the impact disclosure may have on the rationale and policy underlying the claim, *id.* at 712, 94 S.Ct. at 3109. Two extensive protective orders are in effect in this case. The two documents in question are to be turned over to the defendant

subject to any redactions necessary to protect intelligence sources, pursuant to ¶ 8 of the December 1978 protective order.[9] In addition, the two documents are to be stored in the vault at the Justice Department, in accordance with the supplementary protective order of November 1979. These factors lead this court to conclude that disclosure of the two documents will not unduly impair relationships with foreign intelligence services.

For the reasons set forth in this memorandum, it is hereby ORDERED that:

(a) The government's Motion to Modify the August 1978 Discovery Order is granted, except for documents identified as II(A)(1)(a) and III(F)(1)(a) (without the Appendix) which were submitted to this court for *ex parte, in camera* review in April 1979. These two documents may be redacted to prevent disclosure of intelligence sources, pursuant to ¶ (8) of the December 1978 Protective Order, and stored in accordance with the Supplementary Protective Order.

(b) Defendant Miller's Motion to Compel Discovery of Foreign Connections of Weathermen is denied, except for the two documents referred to above in ¶ (a).

(c) The motions of defendants Miller and Felt to dismiss the indictment are denied.

(d) Defendant Miller's motion to produce specific understandings with foreign governments is denied.

---

**9.** These redactions should resemble those used to protect foreign sources in material already turned over to the defendants.