# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 19, 2015 Session

## STATE OF TENNESSEE v. JORDAN THOMAS PETERS

**Appeal from the Criminal Court for Sullivan County**
**No. S58069     Robert H. Montgomery, Jr., Judge**

_____

**No. E2014-02322-CCA-R3-CD – Filed November 5, 2015**

_____

Defendant, Jordan Thomas Peters, was convicted of one count of delivery of psilocin, a Schedule I controlled substance, and one count of delivery of psilocin within 1000 feet of a school.  Defendant received a total effective sentence of fifteen years to serve at 100%. On appeal, Defendant raises the following issues: (1) whether a retrial for delivery of a controlled substance violated the constitutional protection against double jeopardy after Defendant was originally acquitted of sale of a controlled substance; (2) whether the trial court erred in denying his motion to compel discovery of the case names and files of other cases in which the confidential informant had been involved; (3) whether the trial court erred by giving acquittal-first jury instructions, precluding the jury from considering the inference of casual exchange; (4) whether the trial court erred in not giving a specific instruction with regard to the defense of entrapment by luring into a school zone; (5) whether the evidence was sufficient to support his convictions; and (6) whether his sentence was grossly disproportionate to the crime committed and therefore unconstitutional.  Upon our thorough review of the arguments, record, and authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., J., joined.  CAMILLE R. MCMULLEN, J., filed a separate concurring opinion.

M. Jeffrey Whitt (at trial and on appeal), Knoxville, Tennessee; and Randall E. Reagan (on appeal), Morristown, Tennessee, for the appellant, Jordan Thomas Peters.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry P. Staubus, District Attorney General; Kent Chitwood and Lesley A. Tiller, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

On May 18, 2010, Defendant was indicted by the Sullivan County Grand Jury in a four count indictment for selling and delivering psilocin, a Schedule I controlled substance, on July 21, 2009, and selling and delivering psilocin within 1000 feet of a school on July 28, 2009. Defendant was originally tried in January of 2012. Defendant was convicted as charged of delivering psilocin and delivering psilocin within 1000 feet of a school, and he was convicted of the lesser-included offense of casual exchange for each charge of selling psilocin. The trial court merged each conviction for casual exchange into the corresponding conviction for delivery. Defendant received a total effective sentence of fifteen years to serve at 100%.

Subsequently, this Court reversed the judgment of the trial court and remanded for a new trial, finding that the trial court erred by restricting Defendant's cross examination of the confidential informant (CI) concerning prior convictions. *State v. Jordan Peters*, E2012-02135-CCA-R3-CD, 2014 WL 50795, at *9 (Tenn. Crim. App. Jan. 7, 2014), *no perm. app. filed*. Prior to Defendant's retrial, the State dismissed the two counts of casual exchange. Defendant was retried on July 29, 2014, at which time the following facts were adduced:

In June of 2009, Heather Caudill and her husband, Chris,[1] began working for the Bristol Police Department as confidential informants. According to Detective Ginger Crowe, the Caudills provided the police with a list of people they knew who were selling narcotics in the area and offered to assist the police in apprehending them. At that time, Ms. Caudill was on probation for fraudulently obtaining prescription medication in both Tennessee and Virginia. Ms. Caudill worked as a CI on approximately 50 or 60 transactions and was compensated $100 for each transaction.

On July 21, 2009, Ms. Caudill informed the detectives that she had been in contact with Defendant and that he had offered to sell her some hallucinogenic mushrooms. Both Mr. and Ms. Caudill, as well as their car, were searched for contraband. Ms. Caudill was outfitted with a video and audio recording device, as well as an audio transmitter that allowed the police to monitor the transaction in real time. She was given $40 of previously recorded buy money, the amount set by Defendant for the mushrooms.

The detectives followed the Caudills' vehicle to the agreed location of the transaction—behind a Food City grocery store. Defendant's car was the only vehicle in that area. Ms. Caudill approached Defendant, and he complained that he had been

---

[1] Mr. Caudill was deceased by the time of the retrial.

waiting for fifteen minutes. Ms. Caudill got into Defendant's vehicle with him, and he showed her the mushrooms, which he called "flying saucers." He described how to consume them in order to maximize their hallucinogenic effect and advised Ms. Caudill to "stay in a safe environment" when she used them. Defendant then gave Ms. Caudill the mushrooms, and Ms. Caudill gave him the $40. The video recording of this transaction was entered into evidence.

After the transaction was complete, Detective Crowe met the Caudills at a separate location. Detective Daniel Graham followed Defendant's vehicle for a short distance before returning to the meeting location. Detective Crowe retrieved the mushrooms from Ms. Caudill. Subsequent testing by the Tennessee Bureau of Investigation (TBI) revealed that the mushrooms weighed 2.9 grams and contained psilocin, a Schedule I controlled substance.

According to Ms. Caudill, Defendant told her that he was expecting to receive more mushrooms the following week and that he would call her when he had them. On July 28, 2009, Ms. Caudill spoke to Defendant about purchasing more mushrooms, though she could not remember who called who first. At the direction of Detectives Crowe and Graham, Ms. Caudill called Defendant to arrange a second transaction. The detectives listened to the call on speakerphone. Defendant, who worked as a pizza delivery driver at that time, told Ms. Caudill that he would be getting gas at the BP station on Bluff City Highway and that she could meet him there. Similar to the first transaction, Ms. Caudill and her vehicle were searched for contraband, and she was outfitted with a recording device. Ms. Caudill was provided with $80 of pre-recorded buy money, the price set by Defendant for a larger quantity of mushrooms.

Defendant was pumping gas when Ms. Caudill arrived at the gas station. Detective Graham recognized Defendant's vehicle from the first exchange. After a brief exchange of pleasantries, Defendant handed Ms. Caudill the mushrooms, and she handed him the $80. The video recording of this transaction was entered into evidence. Analysis by the TBI determined that the mushrooms weighed 6.22 grams and contained psilocin. The gas station was 587 feet away from Haynesfield Elementary School.

On cross-examination, Ms. Caudill explained that she met Defendant through her husband who had mutual friends with Defendant. Even though the Caudills were more than ten years older than Defendant and his friends, Defendant and Mr. Caudill would get together to play video games and smoke marijuana. Ms. Caudill denied using marijuana with Defendant but admitted that she had a "prescription pill problem" at the time. Ms. Caudill denied being friends with Defendant but said that he was the only one out of the group that understood her sarcastic sense of humor.

Defendant called his friend, James Rutherford, to testify on his behalf. Mr. Rutherford had known Defendant for ten years and also knew the Caudills. He said that he met the Caudills in the summer between his junior and senior year of high school and that the Caudills were much older than the rest of his friends. He and Defendant would hang out with the Caudills two or three times a week over the course of a year. When they got together, they would play video games and use drugs. Mr. Rutherford said that Ms. Caudill introduced him to prescription pills and that he saw Defendant using drugs with Ms. Caudill on several occasions. Ms. Caudill would talk to Mr. Rutherford about how long various drugs stayed in his system to ease his concerns about being drug tested at school. By the time of his testimony, Mr. Rutherford had been clean for two years, was active in Narcotics Anonymous (NA), and was working as a counselor in a halfway house program.

On cross-examination, Mr. Rutherford stated that he and Defendant consumed drugs with the Caudills at parties and other people's homes. He explained that drugs were often present at these gatherings and that attendees could partake of whatever was around without necessarily knowing who had purchased them. He denied that they ever met behind grocery stores to exchange drugs or that they established the cost of the drugs over the phone prior to using them together.

Defendant also testified on his own behalf. He explained that he met the Caudills in 2008 through mutual friends. He and the Caudills would get together three to five times a week to play video games and basketball, as well as use marijuana and pills. Defendant considered the Caudills to be his friends. He gave Ms. Caudill a video cassette recorder for her children and would go to the store for them whenever they asked.

Defendant claimed that on July 21, 2009, Ms. Caudill called him repeatedly. He finally called her back, and she asked if he "had anything," which he knew was a request for drugs. He told her that he had some mushrooms that he and his friends bought together. Defendant testified that this was the only time he had ever bought or used mushrooms and that he did not like them because he and his friends had a "negative experience." Defendant told Ms. Caudill that she could meet him at the Food City grocery store since he was going there to meet a friend. Defendant testified that the amount of mushrooms he gave to Ms. Caudill was enough for one person; if two people split that amount, then they would not get the desired effect. He sold the mushrooms to her for $40, the amount he estimated that he had paid for that portion, and then used the money to buy marijuana.

Defendant testified that on July 28, 2009, Ms. Caudill again began "blowing up" his phone, making numerous calls to him, but that he did not answer. She called his job to see if he was at work, then sent him a text message asking if he "had anything." He

told her that he still had some mushrooms left, and Ms. Caudill said that she wanted enough for both herself and her husband to take. Defendant said that he agreed to give Ms. Caudill the mushrooms so that she would quit bothering him and set the price at $80.

Defendant told Ms. Caudill that he did not have the mushrooms with him at work, that he would have to go home to get them, and that he would then meet her while he was out on a delivery. According to Defendant, after he obtained the mushrooms, Ms. Caudill told him that he could meet her at the BP gas station. Defendant testified that Ms. Caudill lived just a few miles away from that gas station.

The jury convicted Defendant as charged of delivery of psilocin and delivery of psilocin within 1000 feet of a school. Defendant waived a sentencing hearing, and the trial court imposed the minimum sentence for each conviction: eight years at 30% for delivery, and fifteen years at 100% for delivery in a school zone. The trial court ordered the sentences be served concurrently, for a total effective sentence of fifteen years to serve at 100%. Defendant filed a motion for new trial, which was denied after a hearing on October 24, 2014. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant raises the following issues: (1) whether a retrial for delivery of a controlled substance violated the constitutional protection against double jeopardy after Defendant was originally acquitted of sale of a controlled substance; (2) whether the trial court erred in denying his motion to compel discovery of the case names and files of other cases in which the confidential informant had been involved; (3) whether the trial court erred by giving acquittal-first jury instructions, precluding the jury from considering the inference of casual exchange; (4) whether the trial court erred in not giving a specific instruction with regard to the defense of entrapment by luring into a school zone; (5) whether the evidence was sufficient to support his convictions; and (6) whether his sentence was grossly disproportionate to the crime committed and therefore unconstitutional.[2]

## I. Double Jeopardy

On June 20, 2014, Defendant filed a motion to dismiss counts two and four of the indictment, each of which charged delivery of a controlled substance, on the ground that prosecution of those charges would violate double jeopardy principles. In his first trial, the jury acquitted Defendant in counts one and three of selling a controlled substance and found him guilty of the lesser-included offense of casual exchange. In the hearing on the

---

[2] For the purpose of clarity, we have reordered and renumbered the issues as raised by the Defendant in his brief.

motion, Defendant argued that a prosecution for both delivering a controlled substance and casual exchange would violate double jeopardy principles because casual exchange is a lesser-included offense of delivery.[3] The trial court denied the motion, and the State dismissed the charges of casual exchange before trial. On appeal, Defendant argues that the trial court erred in denying his motion to dismiss because delivery is a necessary element of a sale, of which he had been acquitted. The State disagrees, arguing that the sale and delivery of a controlled substance are separate offenses and that an acquittal on one does not preclude a retrial on the other.

The Double Jeopardy Clause of both the United States and the Tennessee constitutions guarantee that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. The Double Jeopardy Clause provides three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *abrogated on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Whether multiple convictions violate double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

At the hearing on Defendant's motion to dismiss, it appears that his argument fell into the third category—protection against multiple punishments for the same offense in a single prosecution. On appeal, however, it appears that his argument falls into the first category—protection against a second prosecution for the same offense after an acquittal. In either case, the threshold issue to be addressed is what constitutes the "same offense" for double jeopardy purposes. The Tennessee Supreme Court has divided such claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the *same* statute asserts that the multiple convictions are for the same offense"; and (2) multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under *different* statutes alleges that the statutes punish the same offense." *Id*. (citing *Watkins*, 362 S.W.3d at 543-44) (emphasis in original).

In this case, Defendant is raising a multiple description claim. *See id*. at 767 (analyzing different subsections of T.C.A. § 39-16-502 as different statutes for double jeopardy purposes). To address a multiple description claim, we must apply the two-

---

[3] At the hearing on the motion, the State indicated its intention to voluntarily dismiss the charges of casual exchange in counts one and three but had not yet done so.

pronged test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Smith*, 436 S.W.3d at 767; *Watkins*, 362 S.W.3d at 556.

> In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required. When the legislative intent is unclear, however, we must apply the "same elements test" from *Blockburger*. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy.

*Smith*, 436 S.W.3d at 767 (internal citations omitted).

In Tennessee Code Annotated section 39-17-417, the General Assembly set out four offenses: (1) manufacturing a controlled substance, (2) delivering a controlled substance, (3) selling a controlled substance, and (4) possessing a controlled substance with the intent to manufacture, deliver, or sell it. The Sentencing Commission Comments specifically state, "The commission wished to make it clear that *each of these acts was a separate offense* and therefore listed the manufacture, delivery, sale or possession with intent to manufacture, deliver or sell each as a separate subsection." *Id.* (emphasis added). Accordingly, sale and delivery of a controlled substance must be charged separately in an indictment. *See State v. Lindsey*, 208 S.W.3d 432, 438 (Tenn. Crim. App. 2006) (citing *State v. Angela E. Isabell*, No. M2002-00584-CCA-R3-CD, 2003 WL 21486982, *3 (Tenn. Crim. App. June 27, 2003), *no perm. app. filed*). Defendant cites *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002), for the proposition that "a sale consists of two components: a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." However, because the General Assembly has made clear its intent that the sale and delivery of a controlled substance are separate offenses, we find Defendant's argument to be unavailing, and no further analysis is needed. *See Smith*, 436 S.W.3d at 767. Therefore, retrial on the charges of delivery of a controlled substance, of which Defendant had been convicted in his first trial, does not offend double jeopardy principles based upon the fact that he was acquitted of the charges of sale of a controlled substance in his first trial.

As to the issue raised pre-trial—that simultaneous prosecution for delivery of a controlled substance and casual exchange violates double jeopardy—the State cured this issue by voluntarily dismissing the charges of casual exchange before trial. We recognize that casual exchange is a lesser-included offense of delivery of a controlled substance. *See State v. Marvin Harold Dorton, II*, E2013-01580-CCA-R3-CD, 2014 WL 3893363, at *13 (Tenn. Crim. App. Aug. 11, 2014), *no perm. app. filed*. Under the *Blockburger*

test, punishment for both casual exchange and delivery of a controlled substance arising from the same transaction would violate double jeopardy principles. *See Smith*, 436 S.W.3d at 767. The remedy would be to either merge the convictions after trial—as was done in the first trial of this case—or to dismiss or consolidate the indictments before trial—as the State did upon retrial. *See State v. Rhonda Patricia Mayes*, M2001-00423-CCA-R3-CD, 2002 WL 1585643, at *7 (Tenn. Crim. App. July 18, 2002) (citing D. Raybin, Tennessee Criminal Practice and Procedure § 16.20, p. 412 (1984)), *no perm. app. filed*; *see also State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997). Therefore, there was no double jeopardy violation, and Defendant is not entitled to relief on this ground.

## II. Discovery

On June 20, 2014, Defendant filed a motion to compel discovery, specifically seeking the case names or files of other cases in which Ms. Caudill had acted as a confidential informant. Defendant asserted that such information may reveal a pattern of Ms. Caudill's engaging in drug transactions in school zones, which in turn may be relevant to his entrapment defense. Defendant sought to "review the discovery material in order to assess its value to the issue, if it exists." The State argues that the trial court did not err in denying the motion because the Defendant failed to show that the requested information was material to his defense.

Under Tennessee Rule of Criminal Procedure 16(a)(1)(F)(i):

> Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control and . . . the item is material to preparing the defense. . . .

The entry of orders necessary to ensure compliance with Rule 16 falls within the discretion of the trial court. *See State v. Brown*, 836 S.W.2d 530, 548 (Tenn. 1992). This Court will review a trial court's ruling on a motion to compel discovery for an abuse of discretion. *State v. Vanderford*, 980 S.W.2d 390, 397 (Tenn. Crim. App. 1997).

A defendant must show that the requested evidence is "material to preparing the defense." Tenn. R. Crim. P. 16(a)(1)(F)(i). In determining whether the requested discovery is material, this Court has looked to federal authority interpreting the analogous Federal Rule of Criminal Procedure 16(a). *See State v. Thomas Dee Huskey*, No. E1999-00438-CCA-R3-CD, 2002 WL 1400059, at *59 (Tenn. Crim. App. June 28, 2002), *perm. app. denied* (Tenn. Feb. 18, 2003). "'Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. . . . There must

be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *Id.* (quoting *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978)). Additionally, to be material, there must be "'a strong indication that [the evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment and rebuttal.'" *Id.* (quoting *Hershel Clark v. State*, No. 02C01-9112-CR-00273, 1993 WL 188052, at *6 (Tenn. Crim. App. June 2, 1993) (quoting *United States v. Felt,* 491 F. Supp. 179, 186 (D.D.C. 1979))).

To make this showing, the defendant "must do more than emphatically state he needed certain discovery. He must show how the discoverable items were material to the preparation of his defense." *Id.* at *60. The defendant should make an offer of proof or seek to have the documents entered into the record under seal in order to assist this Court in evaluating his claim of materiality. *See State v. Phillip Matthew Burgess*, M2013-00252-CCA-R3-CD, 2014 WL 309644, at *7 (Tenn. Crim. App. Jan. 28, 2014) (citing *State v. Schiefelbein,* 230 S.W.3d 88, 148 (Tenn. Crim. App. 2007)), *no perm. app. filed*; *State v. Elizabeth Gay Tindell*, No. E2008-02635-CCA-R3-CD, 2010 WL 2516875, at *16 (Tenn. Crim. App. June 22, 2010), *perm. app. denied* (Tenn. Nov. 17, 2010). On appeal, the defendant "bears the burden of showing 'the degree to which the impediments to discovery hindered trial preparation and defense at trial.'" *State v. Anthony D. Forster*, M2002-0008-CCA-R3-CD, 2011 WL 1431980, at *14 (Tenn. Crim. App. Apr. 12, 2011) (quoting *State v. Brown*, 836 S.W.2d 557, 560 (Tenn. 1993)), *perm. app. denied* (Tenn. Aug. 24, 2011).

In this case, Defendant was provided with the number of cases Ms. Caudill had worked as a CI as well as how much she was compensated, and he used that information to impeach her at trial. However, Defendant was additionally seeking the specific case names and files in order to determine how many of those cases occurred in a school zone. According to Defendant, such information might reveal a pattern of Ms. Caudill's luring suspects into school zones, and he argued that such a pattern would go to supporting his entrapment defense. However, Defendant did not seek to make an offer of proof or have the requested information placed into the record under seal. Therefore, we can only speculate as to whether such a pattern exists.

Regardless of whether the requested information would have revealed a pattern of Ms. Caudill's engaging in drug transactions in school zones, we do not see how such information would be material to the defense. As will be discussed further below, an entrapment defense requires evidence that, but for the inducement of law enforcement or their agent, the defendant was not otherwise inclined to commit the crime. *See* T.C.A. § 39-11-505. Even if the requested information revealed a pattern of Ms. Caudill's engaging in drug transactions in school zones, the selection of the location of a drug transaction in any given case may be based upon numerous factors. The details of these

other cases would have no bearing on whether Defendant was inclined to deliver drugs in a school zone. Defendant has not shown how this information would significantly alter the quantum of proof in his favor. *See Thomas Dee Huskey*, 2002 WL 1400059, at \*59. Additionally, Defendant has made no indication that the specific details of these other cases would have assisted in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal. *See id.* The trial court did not abuse its discretion in denying Defendant's motion to compel.

## III. Jury Instructions

Defendant has raised two issues with regard to the jury instructions: (1) that the trial court erred by instructing the jury that it had to acquit Defendant of delivery before it could consider casual exchange as a lesser-included offense; and (2) that the trial court erred by not giving a special instruction on entrapment by luring into a school zone.

It is well-recognized that a defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *see State v. Leath*, 461 S.W.3d 73, 105 (Tenn. Crim. App. 2013). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). A jury instruction is considered "prejudicially erroneous" only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id.* Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001). With this in mind, we turn to the Defendant's claims with regard to the jury instructions in this case.

## A. Casual Exchange

Defendant argues that the trial court erred by instructing the jury that it had to acquit Defendant of delivery before it could consider casual exchange—including the inference with regard to the amount of controlled substance—as a lesser-included offense. However, Defendant did not object to the trial court's instruction at trial and failed to raise the issue in his motion for a new trial.[4] *See* Tenn. R. Crim. P. 30(b); Tenn.

---

[4] In Defendant's motion for a new trial, he asserts, "The Prosecution committed plain error in its closing argument by arguing the defendant committed the greater offense (Delivery) by admitting he committed the lesser offense (casual exchange)." During the motion hearing, defense counsel refers to the jury instructions on casual exchange when arguing that the statement made by the State was in error; however, there was no argument that the instructions themselves were in error. Therefore, it appears that Defendant is raising this issue for the first time on appeal.

R. App. P. 3(e).  Therefore, this issue has been waived unless Defendant can establish that the trial court committed plain error.  *See* Tenn. R. App. P. 3(e); 36(a), (b).

When an error was not included in a motion for a new trial, a defendant may seek relief under plain error analysis.  *See* Tenn. R. App. P. 36(b).  There are five factors that must be established before an error may be recognized as plain:

> (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the accused did not waive the right for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  The burden is on the accused to persuade the appellate court that the trial court committed plain error and that the error was of "such a great magnitude that it probably changed the outcome of the trial."  *Id.* at 283 (quoting *Adkisson*, 899 S.W.2d at 642); *see also* Tenn. R. App. P. 36(b) (relief may be granted when an "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process").  "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established."  *Id.*

The State argues that the record does not clearly establish what happened in the trial court because the written jury instructions are not included in the record.  However, the transcript of the trial court's oral instructions to the jury is included in the record, and this is the proper means of including the jury instructions in the record.  *See State v. Marcus Anderson*, W2011-00139-CCA-R3-CD, 2012 WL 3871409, at *2 (Tenn. Crim. App. Sept. 5, 2012) (noting that "[f]ailure to include a transcript normally waives review of appellate issues pertaining to jury instructions because without a complete record, it is impossible for this court to discern whether the written jury instruction conforms to the instructions as read to the jury and thus, whether error actually occurred") (internal citations omitted), *no perm. app. filed*.  We find that the record included on appeal clearly established what occurred in the trial court.

The trial court in this case instructed the jury that it "should first deliberate on the charged offense," that they should "stop [their] deliberations as to that count" if they find Defendant guilty beyond a reasonable doubt, and that they should consider the next lesser-included offense "[o]nly if [they] find the Defendant not guilty of the greater offense."  With regard to the lesser-included offense of casual exchange, the trial court instructed the jury as follows: "It may be inferred from the circumstances indicating a casual exchange among individuals of a small amount of controlled substances, that the

controlled substances so exchanged were possessed not with a purpose of selling or otherwise dispensing them." Additionally, the trial court instructed that "the term 'casual exchange' does not exclude a transaction in which money is involved."

Defendant has not established that there was a breach of a clear and unequivocal rule of law or an adverse effect on a substantial right. As stated above, a jury instruction is considered "prejudicially erroneous" only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Hodges*, 944 S.W.2d at 352. Defendant has not shown that the jury instruction on the acquittal-first approach to considering lesser-included offenses failed to fairly submit the legal issues or was misleading. Our supreme court has rejected the contention that acquittal-first instructions violate the constitutional right to trial by jury, finding that they actually protect the right to a unanimous jury verdict. *State v. Davis*, 266 S.W.3d 896, 904-05 (Tenn. 2008). The supreme court noted that, when given sequential instructions, "a jury considering a greater offense, by necessity, simultaneously considers, albeit not explicitly, all applicable lesser included offenses supported by the proof," especially "those lesser included offenses whose statutory elements are included within the statutory elements of the offense charged." *Id*. at 904 & n.8. Therefore, the jury in this case necessarily considered the elements of casual exchange simultaneously with the elements of delivery, including the inference with regard to the amount of the controlled substance. Defendant has not established that the trial court committed plain error by utilizing acquittal-first jury instructions.

## B. Entrapment

Defendant argues that the trial court erred by not giving a special jury instruction on the defense of entrapment by being lured into a school zone. A defendant is entitled to have a defense submitted to the jury when it is fairly raised by the proof. *See* T.C.A. § 39-11-203(c). When determining whether to instruct the jury on a particular defense, the trial court must "consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993).

"It is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so." T.C.A. § 39-11-505. After viewing the evidence in the light most favorable to the defendant, "where the proof fairly raises the issue of entrapment, and the proof is supported by credible evidence, the trial court is required to give the instruction of entrapment whether requested or not." *State v.*

*Blackmon*, 78 S.W.3d 322, 331 (Tenn. Crim. App. 2001).[5] Then "the issue of predisposition becomes a question of fact for the jury." *Id*. (citing *Sherman v. United States*, 356 U.S. 369 (1958)).

As this Court noted in Defendant's prior appeal, "proof that the State lured a defendant into the 1000′ school zone would 'fairly raise' an entrapment defense." *Jordan Peters*, 2014 WL 50795, at *13 (quoting *State v. Charles Lincoln Faulkner*, E2006-02094-CCA-R3-CD, 2008 WL 2242531, at *16 (Tenn. Crim. App. June 2, 2008)).[6] The trial court in this case instructed the jury on the defense of entrapment. On appeal, Defendant asserts that the trial court should have given an instruction containing language specifically regarding entrapment by luring into a school zone. However, Defendant failed to file a written request for such a special jury instruction. *See* Tenn. R. Crim. P. 30(a); *Leath*, 461 S.W.3d at 107 (citing *State v. Mackey*, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982) (stating that Rule 30 "envisions that such requests be made in writing" and that oral requests for instructions are not sufficient for an appellate court to place a trial court in error for rejecting a requested jury instruction)). Additionally, this Court has never held that a special instruction on "luring" into a school zone is required in addition to the standard entrapment instruction that was given by the trial court in this case. Finally, Defendant has not shown that the instructions given by the trial court were prejudicially erroneous. *See Hodges*, 944 S.W.2d at 352; Tenn. R. App. P. 36(b). The jury was given a lengthy explanation of the entrapment defense as to "the crimes charged," as well as the elements of the offense of delivering psilocin and the school zone enhancement. It cannot be said that the instructions failed to fairly submit the legal issues or that the jury was misled as to the applicable law. *See Hodges*, 944 S.W.2d at 352. Defendant is not entitled to relief.

## IV. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the

---

[5] Unlike during Defendant's first trial, Defendant properly filed pre-trial notice of his intent to raise an entrapment defense. *See Jordan Peters*, 2014 WL 50795, at * 13.

[6] In addition to evidence that law enforcement "lured" the defendant to the location of the transaction, there must also be evidence that the defendant was not predisposed to violate the Drug Free School Zone Act before the defense of entrapment could be said to be fairly raised. *Charles Lincoln Faulkner*, 2008 WL 2242531, at *9. However, the panel in *Charles Lincoln Faulkner* "express[ed] no opinion about whether such evidence would actually constitute a defense to the Drug Free School Zones Act." *Id*. at *9 n.7; *see State v. Smith*, 48 S.W.3d 159, 169 (Tenn. Crim. App. 2000) (holding that there is no mens rea requirement to the school zone enhancement and that the State need not prove that a defendant knew he was in a drug free school zone). We, likewise, express no opinion on the merits of this defense.

accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn.2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This standard of review applies whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Under Tennessee Code Annotated section 39-17-417(a)(2), it is an offense to knowingly deliver a controlled substance. "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." T.C.A. § 39-17-402(6). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). If the offense occurs within 1000 feet of the real property of a school, the offense is punished one classification higher, and the defendant is required to serve 100% of the minimum sentence for his range. T.C.A. § 39-17-432(b), (c).

In the light most favorable to the State, the evidence shows that on July 21, 2009, Ms. Caudill spoke to Defendant on the phone, and Defendant offered to give her some hallucinogenic mushrooms for $40. Defendant arranged to meet with Ms. Caudill behind a grocery store. Ms. Caudill met with Defendant and exchanged $40 for 2.9 grams of mushrooms containing the Schedule I controlled substance psilocin. Defendant advised Ms. Caudill on how to use the mushrooms to increase their hallucinogenic effect. Ms. Caudill and Defendant arranged a second meeting on July 28, 2009. Ms. Caudill spoke to Defendant on speakerphone with the detectives listening, and Defendant suggested that they meet at the BP gas station on Bluff City Highway. This location was less than 1000 feet from a school. Ms. Caudill met Defendant at the gas station, where he was pumping

gas into his car. Ms. Caudill gave Defendant $80 for 6.22 grams of mushrooms containing the Schedule I controlled substance psilocin.

Defendant argues that the evidence does not prove beyond a reasonable doubt that the transactions in this case were felonious deliveries rather than casual exchanges. *See* T.C.A. § 39-17-418. An exchange means "to part with, give or transfer consideration of something received as an equivalent," and the term casual means "without design." *State v. Helton*, 507 S.W.2d 117, 120 (Tenn. 1974). As noted above,

> It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of § 39-17-417(a).

T.C.A. § 39-17-419. "A 'casual exchange' contemplates a spontaneous passing of a small amount of drugs, for instance, at a party. Money may or may not be involved." *State v. Copeland*, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998). A transaction will not be deemed a casual exchange if there was a design or previous plan to make the exchange. *State v. Carey*, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995); *Loveday v. State*, 546 S.W.2d 822, 826 (Tenn. Crim. App. 1976). "Whether a transfer was [a] 'casual exchange' is to be determined from all the facts and circumstances of the case." *State v. Prince*, 713 S.W.2d 914, 918 (Tenn. Crim. App. 1986) (citing *Helton,* 507 S.W.2d at 121).

Despite the small amount of drugs and money involved in each transaction, it cannot be said that these transactions were without design. Defendant twice arranged to meet with Ms. Caudill outside of their usual social gatherings. He also set the price and the amount of the controlled substance and instructed her on how to consume the mushrooms at a later time. We note again that, on appeal, the State is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *Goodwin*, 143 S.W.3d at 775. This includes the inference on whether a transfer is a casual exchange based on the amount of the controlled substance as well as all other facts and circumstances. The judge properly instructed the jury on the offense of delivery of a Schedule I controlled substance and on the lesser-included offense of casual exchange of a controlled substance, including the casual exchange inference. Notwithstanding the Defendant's argument that the transaction is more properly a casual exchange rather than a felonious delivery, the jury could and did conclude that the Defendant was guilty of the delivery of a controlled substance beyond a reasonable doubt. We conclude that the evidence is sufficient to support Defendant's convictions.

## V. Sentencing

Defendant argues that the sentence imposed for his conviction for delivery of a controlled substance in a school zone—fifteen years to serve at 100%—is "grossly disproportionate" to the crime committed, violating his constitutional right against cruel and unusual punishment.[7] The State argues that Defendant has waived consideration of this issue by failing to include a transcript of a sentencing hearing. However, Defendant waived a sentencing hearing at the conclusion of trial, and the trial court imposed the minimum sentences for each of his convictions without objection. We also note that Defendant unsuccessfully raised this very same issue with regard to his sentence in his original appeal. *See Jordan Peters*, 2014 WL 50795, at *14.

This Court must review a trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. Defendant was convicted of the Class A felony of delivering a Schedule I controlled substance within 1000 feet of a school. *See* T.C.A. § 39-17-417(a), (b); T.C.A. § 39-17-432(b). The sentencing range for a Range I, standard offender for a Class A felony is fifteen to twenty-five years. T.C.A. § 40-35-112(a)(1). Because Defendant received the minimum sentence in his range, this Court previously "conclude[d] that there is no inference of 'gross disproportionality.'" *Jordan Peters*, 2014 WL 50795, at *14 (citing *State v. Harris*, 844 S.W.2d 601, 603 (Tenn. 1992)). Additionally, this Court has repeatedly rejected similar proportionality claims with regard to the 100% service requirement for violations of the Drug Free School Zone Act. *See Smith*, 48 S.W.3d at 170-73; *State v. Jenkins*, 15 S.W.3d 914, 919-20 (Tenn. Crim. App. 1999). Therefore, we conclude that Defendant's fifteen-year sentence is constitutional.

*Conclusion*

Based on the foregoing, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

---

[7] Defendant does not challenge the eight-year sentence imposed for the Class B felony of delivering a Schedule I controlled substance, which was run concurrently with the fifteen-year sentence.